Lawrence **BURKHALTER,** Appellant,

v.

**STATE of Indiana,** Appellee.

No. 379S83.

Supreme Court of Indiana.

Dec. 11, 1979.

Theo. L. Sendak, Atty. Gen., Jeffrey K. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Lawrence Burkhalter, was convicted of neglect of a dependent, Ind. Code § 35–46–1–4 (Burns 1979 Repl.); battery, Ind.Code § 35–42–2–1 (Burns 1979 Repl.); and murder, Ind.Code § 35–42–1–1 (Burns 1979 Repl.). Defendant was given no sentence on the battery conviction. He was sentenced to four years for dependent neglect and sixty years for murder, said sentences to run concurrently. Defendant now appeals raising the following issues:

(1) Whether the trial court erred in overruling defendant's motion for judgment on the evidence;

(2) Whether the trial court erred in admitting the tape recording of defendant's statement to police into evidence; and

(3) Whether the verdict of the jury and judgment of the trial court are contrary to law and not supported by sufficient evidence.

The facts most favorable to the state follow. On February 19, 1978, defendant was residing in Indianapolis with Lawanna Smith and the victim, her four year old son, Eric. At approximately 11:00 a. m. defendant arose from bed and went into the living room where Lawanna was attempting to get Eric to spell the word "butterfly." The child was unable to spell the word correctly. Defendant ordered Eric to undress and get into the bathtub. Defendant demanded that Eric spell the word correctly. When the child repeatedly failed in his attempts, defendant got into the tub with him, placing one knee on the child's stomach and began dunking him underneath the bath water. Defendant later told police officers that he said to the boy, "What are you trying to do, boy, make me beat your brains out?"; "Hey boy are you trying to make me kill you?"; and "Are you trying to kill yourself?" During the incident Eric's head was forcefully bumped against the bathtub. After approximately one hour of this treatment defendant let Eric go to the living

William J. Dougherty, Indianapolis, for appellant.

room where defendant repeatedly knocked the child down and kicked him in the sides and stomach. Detective Kaiser, the police officer who interrogated defendant, testified that defendant explained his stern discipline of the youngster as an effort to "make a man out of him" and to prevent him from being a homosexual. After several hours Eric finally spelled "butterfly" correctly. Eric went to bed around 8:00 o'clock that evening but could not sleep. At approximately 11:00 p. m. the child complained that his head hurt and defendant gave him aspirin. At 1:00 a. m. the next morning defendant noticed that Eric was "breathing funny" and he got Lawanna Smith from her place of employment and they took Eric to a hospital.

At the hospital on February 20, 1978, Eric Smith underwent brain surgery for removal of a large blood clot and abdominal surgery. Other operations followed on March 17, 1978, and May 2, 1978. Eric Smith died on May 26, 1978. An autopsy was performed and it was determined that the cause of death was complication from the blood clot which had resulted from a blunt trauma to the head.

## I.

■ At the end of the state's case defendant moved for judgment on the evidence as to the charge of murder. This motion can only be granted in instances where there is a total lack of evidence on some essential issue or where there is no conflict in the evidence and it is susceptible only to an inference in favor of the accused. *Faught v. State*, (1979) Ind., 390 N.E.2d 1011; *Mitchell v. State*, (1978) Ind., 376 N.E.2d 473.

■ Defendant contends that there was no evidence that he killed the victim either knowingly or intentionally, the essential element of culpability in the definition of murder. Ind.Code § 35–42–1–1 (Burns 1979 Repl.). An individual must either have a conscious objective to kill another, Ind.Code § 35–41–2–2(a) (Burns 1979 Repl.), or be aware of a high probability that his conduct will result in the death of that other indi-

vidual, Ind.Code § 35–41–2–2(b) (Burns 1979 Repl.). This element of culpability has been described as synonymous with the term "purposely" as used in prior murder statutes, Ind.Code § 35–13–4–1 (Burns 1975) and Ind.Code § 35–1–54–1 (Burns 1975). See West's Ann.Ind.Code § 35–42–1–1 (1978), Ind.Criminal Law Study Commission Comments, p. 16. This Court has noted:

"An act is done purposely, if it is willed, is the product of conscious design, intent or plan that it be done, and is done with an awareness of probable consequences." *McKinstry v. State*, (1975) 264 Ind. 29, 35, 338 N.E.2d 636, 640.

Under this definition we held that:

"a barehanded beating or a stomping may permit the jury to draw an inference of purpose and malice. This is especially true if the victim is weaker than his assailant or if the assailant continues to beat or kick the victim after he has fallen and is clearly no threat to the attacker". *Shackelford v. State*, (1976) 264 Ind. 698, 702, 349 N.E.2d 150, 154.

In the instant case, the evidence revealing the dunking and kicking of a four year old boy by an adult man together with defendant's statements to the boy would enable a jury to draw an inference of intent or the requisite knowledge. It would be difficult to conceive of a stronger factual base for the inference of culpability than in the case at bar. Accordingly, the trial court correctly denied defendant's motion for judgment on the evidence.

## II.

■ At trial the state presented a tape recording of a statement made by defendant to the police. The recording, the central element of the state's case, was admitted into evidence by the trial court. Defendant argues that the trial court erred in admitting the tape for two reasons.

First, defendant contends that the recording does not meet with the eight requirements for admission of "mechanical transcriptions" set out in *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795. Defendant's

only objection to the recording is that the state did not show that the testimony elicited was freely and voluntarily made. It is apparent from the testimony of Jerry Barker, a police officer who was present during the interrogation of defendant, that defendant was advised of his rights, including his right to counsel, as required in *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Although defendant disputed that he was ever advised of his right to an attorney, the rights waiver, which defendant signed, included the right to counsel. Furthermore, defendant indicated his understanding of the waiver form and his willingness to make the statement in the following exchange toward the end of his statement.

[DETECTIVE ALDA KAISER:] Q. "Did you understand the question I've asked you up to this point?"

[DEFENDANT:] A. "Yes."

Q. "Were there any threats or promises made to you in order for you to give this statement to us?"

A. "No. No, it was that I would, would want to give. Cause I feel it was necessary for me to give a statement cause like what I did, you know, I'm sorry for doing it, you know. If Eric, you know, if he don't make it, if he do, I want him to make it, you know, and I pray to God that he do make it, you know."

Q. "Did Sergeant Barker advise you of your rights . . . ?"

A. "Yes."

Q. ". . . before you gave us this statement?"

A. "Yes."

Q. "Is there anything else you want to add to this statement?"

A. "No."

We find that defendant's statement to the police was freely and voluntarily given.

### III.

■ In challenging the sufficiency of the evidence, defendant raises two questions. The first is substantially the argument in issue I above. He now contends that the evidence of intent was insufficient for a verdict of guilty beyond a reasonable doubt on the charge of murder. We do not agree. The standards set forth in issue I were taken from cases where defendants challenged jury verdicts on the grounds that the evidence was insufficient. *McKinstry v. State, supra. Shackelford v. State, supra.* Knowledge or intent may be inferred from the facts and circumstances presented in each case. *Williams v. State,* (1979) Ind., 395 N.E.2d 239. It was well within the province of the jury to draw an inference of knowledge or intent from the facts of this case.

■ Defendant claims that the three operations performed on the victim and the fact that more than three months passed between the beating of the victim and his death "must be taken into consideration as factors in Eric Smith's death." We must assume that the jury considered and weighed these factors which were in evidence. However, a lingering death, and medical attempts to avert it, will not absolve a defendant of culpability for a murder. The forensic pathologist who performed the autopsy in this case indicated that the cause of death was a blunt trauma to the head and not the subsequent surgery. We find that the verdict is supported by sufficient evidence.

For the foregoing reasons there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.