528 N.E.2d 1126 (1988)
John GARBISON, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 85S00-8704-CR-00391.
Supreme Court of Indiana.
October 6, 1988.
Thomas J. Mattern, Wabash, for appellant.
Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.
DICKSON, Justice.
Defendant, John Garbison, was convicted by a jury of arson and murder. On this direct appeal, defendant raises two issues:
(1) sufficiency of the evidence and
(2) the trial court's refusal of defendant's tendered instruction regarding the definition of "knowingly."

Sufficiency of the Evidence
Defendant argues that the State's evidence is inconsistent and contradictory and thus does not support either his arson conviction or his murder conviction. He claims that the only "real, probative, eyewitness account" (Appellant's brief, p. 18) is defendant's own statement that the fire started by accident.
In addressing the issue of sufficiency of evidence, this court will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. Case v. State (1984), Ind., 458 N.E.2d 223; Loyd v. State (1980), 272 Ind. 404, 398 N.E.2d 1260, cert. denied, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.
Applying this standard, the evidence that tends to support the convictions is as follows. Defendant lived with his sister, her husband and the couple's four-year-old and six-month-old daughters. On November 18, 1985, the younger daughter, Kimberly, was sleeping in the southeast bedroom, and defendant's brother-in-law was asleep in the master bedroom. The older daughter, Dora, and defendant were in the living room, where Dora was watching television. In a statement to police, Defendant admitted seeing flames begin in the baby's room when he "flipped" ashes from his cigarette, but he then became "scared," returned to the living room, and reclined on the couch. Dora noticed flames and roused defendant, who then awakened his brother-in-law. The brother-in-law unsuccessfully tried to rescue Kimberly. She died in the fire.
*1127 Four fire investigation experts testified that examination of the scene eliminated accidental causes such as the space heater in the southeast bedroom or the house's electrical wiring. Each expert named the living room and southeast bedroom as probable points of origin and determined from the burn patterns that a liquid accelerant had been poured on the floor. The specific accelerant could not be identified in the residue because it was consumed in the fire and because of rainfall. An accelerant, kerosene, was found in a five-gallon can in the yard after the fire.
Defendant's version of the events was that he sprayed bug spray throughout the house and poured it on the baseboards, including in the southeast bedroom, while smoking a cigarette. One expert doubted that cigarette ashes could have started the fire. Another testified that such an occurrence was "highly unlikely" and that he believed an open flame would have had to have been used to start the fire. A third expert observed that if the accelerant were sprayed in a mist, it would cause a finer, surface burn, "where this was very deep imbedded burn" that was "a foot or so from the wall" in the southeast bedroom.
Defendant cites Lahrman v. State, (1984), Ind. App., 465 N.E.2d 1162, for its similarity to the case at bar. In Lahrman, the evidence was held sufficient to support an arson conviction where expert testimony showed a low-level burn pattern, indicating accelerant had been spread, and residue of burned gasoline found in samples taken from the burned building. Defendant attempts to distinguish Lahrman's facts because of the lack of accelerant residue here, which, according to defendant, "leave[s] open the clear probability of accidental ignition by roach repellant and cigarette ashes." (Appellant's brief, p. 20)
In Barton v. State (1986), Ind., 490 N.E.2d 317, the evidence was held sufficient to support an arson conviction where an arson investigator testified that an accelerant had been used to start the fire, although the defendant claimed that he had awakened to find his radio and mattress on fire.
As to whether or not the fire was intentionally set, the State's expert testimony that an accelerant was used and that the origin of the fire was throughout the lower floor was worthy of credit, and the jury was reasonable in accepting it. Conversely, it was well within the jury's province to disbelieve the story about the radio, the mattress, and the tiny fire downstairs as well as the proposed theory that previously spilled kerosene caused the fire.
Likewise, that appellant set the fire was proven beyond a reasonable doubt. Arson is almost always subject to proof only by circumstantial evidence, and, here again, we defer to the jury's determination that Barton set the fire. [Emphasis in original.]
Id. at 318. See also Bland v. State (1984), Ind., 468 N.E.2d 1032, 1035 (testimony of arson expert that fire could only have had arson origins and that no accidental cause was involved was sufficient to support jury's guilty verdict).
The counts charging defendant with arson and murder each alleged "knowingly" as the element of culpability. We find that the testimony of the four fire investigation experts, together with defendant's admissions that he was in the bedroom where the fire broke out, that his conduct sparked the flames, and that he thereafter attempted to ignore the fire until it was too late, are sufficient to enable a reasonable jury to find defendant guilty of the arson charge.
Likewise, defendant's actions in starting the fire and then leaving the burning room where Kimberly, a six-month-old baby, was sleeping in her bassinet, are sufficient to support the murder conviction. The jury could have found beyond a reasonable doubt that defendant was aware of a high probability that his conduct would result in the infant's death.

Refusal of Defendant's Tendered Instruction
The trial court refused the following instruction, tendered by defendant:

*1128 "Knowingly" as used in this section is synonymous with "purposely" as used in prior murder statutes. Thus, an act is done "knowingly" or "purposely" if it is willed, is the product of a conscious design, intent, or plan that it be done, and is done with an awareness of the probable consequences.
In reviewing the refusal of a tendered instruction, this court will consider: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. Williams v. State (1980), 273 Ind. 105, 402 N.E.2d 954; Davis v. State (1976), 265 Ind. 476, 355 N.E.2d 836.
Defendant contends that his tendered instruction was taken from Burkhalter v. State, (1979), 272 Ind. 282, 397 N.E.2d 596, 598, and has been quoted with approval by this court as a definition of "knowingly." See Horne v. State (1983), Ind., 445 N.E.2d 976, 979, and Hulen v. State (1980), 274 Ind. 695, 413 N.E.2d 907, 909. However, preceding the Burkhalter language quoted in the tendered instruction is the following:
Defendant contends that there was no evidence that he killed the victim either knowingly or intentionally, the essential element of culpability in the definition of murder. [citation omitted] An individual must either have a conscious objective to kill another [citation omitted] or be aware of a high probability that his conduct will result in the death of that other individual. [citation omitted] This element of culpability has been described as synonymous with the term "purposely" as used in prior murder statutes[.]
397 N.E.2d at 598. The "element of culpability" that is said to be synonymous with "purposely" is not mere "knowingly" but rather the phrase "knowingly or intentionally." It is thus incorrect to equate "purposely" with "knowingly."
In the present case, where the murder charge alleged not "intentionally" but "knowingly kill," the tendered instruction would have given the jury an erroneous standard of culpability. Furthermore, the term "knowingly" was correctly defined by other instructions given by the court.
Judgment Affirmed.
SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.