**Patricia DEAN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00–8707–CR–651.**

Supreme Court of Indiana.

March 21, 1990.

Marce Gonzalez, Jr., Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a verdict of "Guilty But Mentally Ill of Murder." The

trial court imposed a mitigated term of thirty (30) years.

The facts are: On June 11, 1986, Robert Washington, a next-door neighbor of appellant, saw appellant come to the door of her home, return inside, then reappear carrying her baby boy, Samuel, who was two years of age. Appellant climbed on top of a box and Samuel slipped from her arms and fell to the ground. Then appellant stood on top of a brick ledge mumbling with her arms spread apart. Washington asked her to get down and she went to her knees and passed out. Washington noticed that her clothing was wet. Later investigation disclosed that Samuel had died of drowning.

Washington then heard a baby crying. He found appellant's infant daughter under a garbage bag. He removed the baby and called the police. Appellant made a statement to the police in which she stated that she was attempting to hide the children from relatives who were sneaking into her house and putting stuff on her walls and marks on the telephone.

She said these people caused her to work so hard that she had a heart attack and that she was forced to throw away all of her food because they put something in it. She said she thought the best place to hide Samuel was under the water in the bathtub and that while holding him under she put her own face under and drank some of the water.

She also stated that while she was a student at Purdue she had a baby girl but that she was now dead, that she strangled her, and that she was sent to Logansport Hospital where she stayed from May of 1977 to October of 1977. She said the doctor told her she was not crazy and released her.

■ Appellant claims the trial court erred in denying her motion for judgment on the evidence because the court had used an erroneous reasonable man standard on the element of acting knowingly when the proper standard should be a subjective one. She argued that the State did not prove the element of "knowingly or intentionally."

When the trial judge ruled, he stated that the evidence when viewed in a reasonable man's standard, although sparse, was sufficient for the jury to determine that a reasonable man could find that the killing was knowingly done. He cites *Armour v. State* (1985), Ind., 479 N.E.2d 1294, wherein the Court discusses a split in the Court of Appeals as to the appropriate standard in defining "knowingly", pointing out that one district applies an objective standard and then states: "Other districts correctly apply the subjective standard mandated by our culpability definiting [sic] statute." *Id.* at 1297.

The State points out that it actually is immaterial what mental process the judge entertained at the time. His comment was not an instruction to the jury but was his stated reason for overruling the motion for judgment on the evidence. The State points out that a motion for judgment on the evidence may properly be granted only in instances where there is a total lack of evidence on some essential issue or where there is no conflict in the evidence and is susceptible only to an inference in favor of the accused. *Page v. State* (1980), 274 Ind. 264, 410 N.E.2d 1304; *Burkhalter v. State* (1979), 272 Ind. 282, 397 N.E.2d 596. Notwithstanding the judge's statement, the fact remains that there was a conflict in the evidence in this case concerning appellant's mental state at the time the crime was committed.

Appellant points out that the trial court, in giving its final instructions, did in fact correctly instruct the jury as to the subjective test.

We find the trial court did not err in refusing appellant's motion for judgment on the evidence.

■ Appellant contends the trial court erred in failing to suppress her oral and written statements. Her contention is that she was not of sufficient mental capacity to waive her right against self-incrimination knowingly or intentionally. Here, we have conflicting evidence as to the nature and severity of appellant's obvious mental illness. The question was whether her illness was severe enough to render her in-

capable of making a knowing choice or whether notwithstanding her illness she did in fact have sufficient understanding to waive her right against self-incrimination.

This Court has stated previously that if the evidence conflicts as to voluntariness of a confession, we are bound by the trial court's resolution. *Coleman v. State* (1986), Ind., 490 N.E.2d 711. In view of the conflicting evidence on that issue, we cannot say that the trial court erred in overruling appellant's motion to suppress her oral and written statements.

■ Appellant claims the State failed to prove beyond a reasonable doubt that she possessed the requisite *mens rea* to support her conviction of murder. Pursuant to appellant's plea of not guilty by reason of insanity, the trial court appointed Dr. Periolet and Dr. Berkson to examine appellant. Both doctors testified that appellant was suffering from a psychotic condition, and in their opinion, she could not appreciate the wrongfulness of her conduct due to this mental illness. However, lay witnesses, who talked with appellant immediately following the death of the child, indicated that she appeared to know what she had done and freely discussed the fact that on a previous occasion she had killed her child.

An examination of her written statement indicates that although she obviously was suffering from mental defects, she nevertheless answered the questions in a straightforward manner and had no difficulty recalling exactly what she had done with regard to the incident for which she was being tried as well as what she had done on the prior occasion. This case very closely parallels the case of *Campbell v. State* (1989), Ind., 536 N.E.2d 285, 287. In that case, four out of five doctors who testified stated that in their opinion the defendant was insane at the time he committed the offense. In *Campbell*, we held that the trial court had the opportunity to hear and observe the witnesses and determine the weight of their evidence.

When there is evidence on both sides of the question of sanity, this Court is not justified in invading the province of the trial court. *Id. See also Shepherd v. State* (1989), Ind., 547 N.E.2d 839.

The nature of the evidence in the case at bar placed the jury in the position of choosing between two sets of competent witnesses to arrive at a verdict. The jury had the opportunity to observe the witnesses, to examine the evidence, and to come to a difficult conclusion. This Court will not invade the province of the jury in such a situation. *Campbell, supra.*

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., concurs in result without separate opinion.

PIVARNIK, J., not participating.