**James Robert WILLIAMS, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 26S00–8808–CR–768.

Supreme Court of Indiana.

June 6, 1990.

John D. Clouse and Barton A. Bates, Evansville, for appellant.

Linley E. Pearson, Atty. Gen. and Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant, James Robert Williams, was convicted of murder and voluntary manslaughter. He raises the following issues in this direct appeal:

1. right to presence of counsel during psychiatric examination;

2. trial court's comments during *voir dire*;

3. order of seating potential jurors;

4. pretrial publicity;

5. admission of photographs of victims;

6. trial court's calling and examining court-appointed experts; and

7. refusal of tendered instructions.

### 1. Right to Presence of Counsel During Psychiatric Examination

■ The defendant pleaded insanity, and defense counsel asked the trial court for an order that he be allowed to attend the court-ordered psychiatric examinations required by Ind.Code § 35–36–2–2. The trial court instead allowed the examining doctors to decide whether defense counsel could be present during their examinations of the defendant. One of the two doctors did not allow defense counsel to be present.

The defendant argues that under the test stated in *Manley v. State* (1980), Ind.App., 410 N.E.2d 1338, a psychiatric examination following an insanity plea is a "critical stage" at which his constitutional right to counsel arises. *Manley* defines "critical stage" as those parts of the proceedings where incrimination may occur or where the opportunity for effective defense must be seized or be foregone. *Id.* at 1342. This definition was taken from a Third Circuit Court of Appeals case, *United States v. Anderson* (1972), 3d Cir., 461 F.2d 739. However, the United States Supreme Court has taken another path in determining what is a "critical stage."

In *United States v. Wade* (1967), 388 U.S. 218, 87 S.Ct.1926, 18 L.Ed.2d 1149, the Court noted that its cases have construed the sixth amendment guarantee of assistance of counsel to apply to "critical" stages of the proceedings. *Id.* at 224, 87 S.Ct. at 1931, 18 L.Ed.2d at 1157.

> It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.

*Id.* at 226, 87 S.Ct. at 1932, 18 L.Ed.2d at 1157. In *United States v. Ash* (1973), 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619, the Court examined the historical background and development of the sixth amendment right to counsel, then concluded:

> This review of the history and expansion of the Sixth Amendment counsel guarantee demonstrates that the test utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary.

*Id.* at 313, 93 S.Ct. at 2575, 37 L.Ed.2d at 628. The Court was guided by *Wade* and *Ash* in *United States v. Gouveia* (1984), 467 U.S. 180, 188–89, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146, 154–55, when it said:

> We have recognized that the "core purpose" of the counsel guarantee is to assure aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." [quoting *Ash*]
>
> \* \* \* \* \* \*
>
> Although we have extended an accused's right to counsel to certain "critical" pretrial proceedings, [citing *Wade*], we have done so recognizing that at those proceedings, "the accused [is] confronted just as at trial, by the procedural system, or by his expert adversary, or by both," [quoting *Ash*], in a situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality." [quoting *Wade*]

■ Thus, the proper test for determining whether a particular proceeding is a "critical stage," to which the assistance of counsel guarantee applies, is whether the defendant is confronted with the intricacies of the law or the advocacy of the public prosecutor or prosecuting authorities. A psychiatric examination involves no "intricacies of the law." Because the examiner, appointed by the trial court, under Ind. Code § 35–36–2–2, is disinterested, the defendant is thus not facing his adversary in such an examination. The defendant was not entitled to the presence of his counsel during the psychiatric examinations.

## 2. *Trial Court's Voir Dire Comments*

■ The defendant next argues he was harmed by the trial court's mention of John Hinckley during *voir dire*. The trial court made the following comments during *voir dire* of prospective jurors:

Now, does anybody here understand ... does anybody here based on whatever news media coverage they may have been exposed to in this day of all encompassing news exposure, does anybody here believe that because of what they heard they can't decide a case based on law and evidence in the courtroom that they've already made up their mind based on that evidence ... or that news media? No hands raised.

Everybody probably at some time remembers seeing a fellow named Hinckley who supposedly shot Ronald Reagan and everybody saw the news coverage and it was there on television for days and days ...

MR. MARSHALL [defense counsel]: Now, if the Court please ...

COURT:

Mr. Marshall, if you want to make a record you can do it after I'm through. Please sit down. Now, at that time it was on the news media. Now, television news cameras can do marvelous things. Nobody here in this room actually saw John Hinckley shoot Ronald Reagan. The difference being what you saw was a television coverage. Now, does everybody understand the difference between having the witnesses in person under oath tell you what happened as opposed to fifteen seconds on a television news report? Now, I'm not saying that he didn't do it. All I'm saying is that we don't know until the witnesses tell us. Does everybody see the difference? That's an important distinction. And it goes back to what I told you that we are going to decide things based on cold, hard law and facts. Does anybody have a problem with that?

Record, 169–70.

The defendant contends that a "nationwide furor" erupted after Hinckley was found not guilty by reason of insanity and that "[w]hile impossible to prove, the mention of that case would certainly tend to taint the entire jury panel with regard to the defense of insanity itself."

■ A trial judge has broad discretionary power to regulate the form and substance of *voir dire* and has a concurrent duty to remain impartial and to refrain from making unnecessary comments or remarks. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, 291. Here, the trial judge's comments regarding Hinckley contained no mention of insanity nor of the verdict in the Hinckley case. The trial judge used the case to illustrate the difference between media reports jurors may have seen and the evidence they would hear at trial. The defendant's claim that the jury panel was tainted with regard to his insanity defense "is speculative at best, and certainly insufficient to demonstrate an abuse of the trial court's discretion." *Id.* at 292.

## 3. *Order of Seating Potential Jurors*

■ At trial, the court had the bailiff call 14 prospective jurors to the box, two of whom were designated as alternates. When one of the regular prospective jurors was excused, the vacancy was filled from the jury pool rather than by a juror seated in a designated alternate's seat. The defendant argues that this method is contrary to Ind.Trial Rule 47(B)'s requirement that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties" and to the provision in Ind.Code § 33–4–5–9(d) that "[t]he sheriff or bailiff shall call the jurors to the jury box in the same order in which their names were drawn." Section 9(e) of that statute requires the defendant to show harm to his substantial rights to obtain a reversal based on noncompliance with the statute. The harm the defendant cites is his inability to have a particular juror considered for selection on the regular panel "simply because they appeared as number 13 and 14 on the list."

The purpose of the jury selection procedures is to assure that jurors are chosen on a random basis, to avoid even the possibility of bias. *Phillips v. State* (1978), 268 Ind. 556, 559, 376 N.E.2d 1143, 1145. "No litigant has the right to have any particular individual sit on the jury[,] even if qualified[,] as his right is one of rejection and not selection[,] and if he is eventually tendered a fair and impartial jury to try his case that is all to which he is entitled." *Highshew v. Kushto* (1956), 126 Ind.App. 584, 600, 133 N.E.2d 76, 77. *See also Robinson v. State* (1983), Ind., 453 N.E.2d 280. In the absence of purposeful, nonrandom exclusion of prospective jurors, and with no showing of harm to the defendant, any technical noncompliance with the statutory requirements for jury selection does not amount to reversible error. *Russelburg v. State* (1988), Ind., 529 N.E.2d 1193, 1196. The defendant here has shown neither purposeful exclusion nor harm. He is not entitled to reversal on this issue.

### 4. *Pretrial Publicity*

The defendant argues he was entitled to dismissal of the charges because of statements made to the media by police that the defendant had implicated himself in the killings and by the prosecutor that he believed the defendant had been adequately advised of his rights before confessing. He contends that a change of venue from the county is not an appropriate remedy because he should not be forced to give up his constitutional right to be tried in the county in which the offense was committed and because the State should be sanctioned for "contribut[ing] toward the formation of an opinion of guilt in the minds of the potential jury pool." The defendant cites only internal police regulations and attorney disciplinary rules in support of his position.

Even extensive pretrial publicity does not, in itself, render a trial unfair and violate a defendant's right to due process. *Willard v. Pearson* (1987), 7th Cir., 823 F.2d 1141, 1146. A defendant must show pretrial publicity created actual juror prejudice against him. Jurors need not be ignorant of the defendant's case; to show actual juror prejudice, the defendant must show that a juror cannot lay aside any preconceived impression or opinion of the case and decide the case solely on the evidence. *Id.*

Here, the trial court excused two prospective jurors who said they had already formed opinions based on outside information on the case and could not set those opinions aside. The defendant has made no attempt to show the remaining jurors were unable to decide the case solely on the evidence, and even if he had made such a showing, he has cited no authority finding dismissal to be the appropriate remedy.

### 5. *Admission of Photographs*

The defendant contends that certain photographs of the deceased victims should not have been admitted into evidence. He concedes that the photographs are "not particularly gruesome," but argues that they are irrelevant because he had admitted that the victims were human beings who died of gunshot wounds.

Admission of photographs is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Brown v. State* (1987), Ind., 503 N.E.2d 405. A defendant's concession as to the cause of death does not render the photographs irrelevant or inadmissible. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290; *Stamps v. State* (1987), Ind., 515 N.E.2d 507. The admission of a relevant photograph becomes reversible error only if its tendency to inflame the passions of the jury due to its gruesomeness clearly outweighs its relevancy. *Stamps*, 515 N.E.2d 507.

The photographs at issue here were relevant and were not so gruesome that the potential prejudice to the defendant outweighed their relevance. The trial court correctly admitted the photographs.

### 6. *Examination of Court–Appointed Experts*

The defendant urges a reconsideration of this court's opinion in *Butrum v. State* (1984), Ind., 469 N.E.2d 1174, which approved a trial court's calling and examining

its appointed experts under Ind.Code § 35–36–2–2. We decline.

7. *Refusal of Tendered Instructions*

 The defendant argues that the trial court should have given his tendered instruction No. 8, the text of Ind.Code § 35–36–2–4 on commitment proceedings following a verdict of not responsible by reason of insanity, or should have allowed him to discuss that topic during final argument.

 A defendant is not entitled to have the jury instructed on the statutory procedure to be followed upon a verdict of not responsible by reason of insanity unless an erroneous view of the law has been presented to the jury. *Strong v. State* (1989), Ind., 538 N.E.2d 924; *Palmer v. State* (1985), Ind., 486 N.E.2d 477; *Dipert v. State* (1972), 259 Ind. 260, 286 N.E.2d 405. The defendant contends the jury was given an erroneous view during *voir dire* by the trial court's statement that if the jury found the defendant committed the crime but was insane at the time, "[t]here is a very real possibility" that commitment proceedings for mental incompetency would occur. The trial court made the statement at defense counsel's request after a prospective juror said, "I'm not sure I believe that he should be let off totally if found insane or found guilty and then found insane. I'm not sure he should be totally removed of any responsibility."

While the trial court's statement may be viewed as potentially misleading, it was not of the magnitude of the statement by the prosecuting attorney in *Dipert* that the defendant would go "scot free" if the jury found him not guilty by reason of insanity. Here, defense counsel chose not to ask the trial court to clarify the statement at the time, although defense counsel did inform the jury in his next *voir dire* question that "if your verdict would be not guilty by reason of unsound mind or insanity that the Court then would take care of the problem and there would be a commitment hearing and you would have no further responsibility[.]" In addition, the language of the tendered instruction, as a verbatim recitation of the statute, hardly paints a clear picture for the jury, nor does it remind jurors that they are not to consider post-trial proceedings in reaching a verdict. The trial court did not err in refusing the tendered instruction and in prohibiting argument on post-trial proceedings.

 The defendant next argues the trial court erred in refusing his tendered instruction No. 3:

You are instructed that in determining whether the state has proven its case beyond a reasonable doubt, you should consider the character testimony offered by the defendant. It is substantive evidence and should be considered together with all other evidence offered in this case. Character testimony alone may in and of itself create the doubt in your minds sufficient to cause your finding the defendant not guilty.

 In reviewing the refusal of a tendered instruction, this court will consider: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Garbison v. State* (1988), Ind., 528 N.E.2d 1126.

The cases cited by the defendant show that his tendered instruction is an incorrect and incomplete statement of the law. In *Carroll v. State* (1982), Ind., 438 N.E.2d 745, this court held the following instruction was a correct statement of the law:

The defendant has introduced evidence of his reputation for peaceability and honesty. This evidence may be sufficient *when considered with the other evidence in the case* to raise a reasonable doubt of the defendant's guilt.

*However, if from all the evidence in the case you are satisfied beyond a reasonable doubt of the defendant's guilt, then it is your duty to find him guilty, even though he may have a good reputation.* [emphasis added]

*Id.* at 748. In *McQueen v. State* (1882), 82 Ind. 72, 74, this court stated:

Good character may sometimes turn the scale in a defendant's favor, and it is always to be considered in connection with all the other evidence in the case. Where, however, taking into consideration the good character of the accused, guilt is established, then conviction must follow.

The trial court did not err in refusing the defendant's tendered instruction No. 3.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.