ATTORNEY FOR APPELLANT ATTORNEYS FOR APPELLEE

S. Sargent Visher Jeffrey A. Modisett

Indianapolis, Indiana Attorney General of Indiana

Arthur Thaddeus Perry

Deputy Attorney General

Indianapolis, Indiana

IN THE

SUPREME COURT OF INDIANA

JOSEPH T. GARNER, )

)

Appellant (Defendant Below), )

)

v. )  Cause No. 49S00-9709-CR-502

)

STATE OF INDIANA, )

)

Appellee (Plaintiff Below). )

APPEAL FROM THE MARION SUPERIOR COURT

The Honorable Tanya Walton-Pratt, Judge

Cause No. 49G01-9512-CF-195507

December 18, 1998

SHEPARD, Chief Justice.

A jury found appellant Joseph Garner guilty of murder and the trial court sentenced him to serve sixty-five years in prison, with three years suspended to probation.   

Garner raises three issues in this direct appeal:

I. Whether the defense of insanity should have prevailed;

II. Whether the trial court erred in permitting the jury to consider evidence of Garner's state of mind after he had received treatment and medication; and

III. Whether the sixty-five year prison sentence is unreasonable.

Facts

Joseph Garner was living in his car behind a fast food restaurant.  After a long period of separation, Joseph went to the home of his adoptive father, Paul Garner, on Christmas Eve of 1995.  Paul welcomed Joseph into his home and introduced him to his neighbor Amanda, who included both Paul and Joseph in her family Christmas celebration that evening.  At the party, Joseph discussed religion and spiritual topics.  On Christmas Day, Amanda and Paul had dinner at Amanda's apartment.  Paul left between 9:30 and 10 p.m. 

At 3 a.m. the next morning, Joseph went to Amanda's house to ask if he could stay with her but Amanda declined.  When Amanda asked if Paul was all right, Joseph responded "Okay?  What's okay?  No, he's not okay.  Did you know that he was married four times and he sodomized me as a child?" (R. at 549.)  Joseph proceeded to explain to Amanda that his alter ego, Greg, had sucked the spirit out of China, and that his father was angry and was picking on him.  Paul then called and asked Amanda to send Joseph home.  Joseph left Amanda's residence claiming that he was going to erase his own "name from the book of life." (R. at 554-55.)  Later that morning, Amanda tried twice to call to warn Paul of Joseph's odd behavior but there was no answer.  Then she heard a knock at her door and found her Christmas wreath thrown to the floor.  At 9:30 a.m., Amanda learned that Paul was dead. 

At 8 a.m. that same morning, Joseph arrived at the door of  Pastor Mike Abbot, barefoot, wrapped in a blanket, and asking for help "in the name of Jesus Christ." (R. at 603-06.)  Abbot drove Joseph to the police station.  On the way there, Joseph explained that he had killed a man.  Joseph's hands were lacerated and bloody.  Without prompting, Joseph told an officer that he killed his father.  The officer advised Joseph of his 
Miranda
 rights, and Joseph then revealed the location of the body.  He also gave a statement describing the killing in detail.  A pathologist determined that Paul had been beaten, cut, and stabbed with a knife and a dowel rod.  Part of the body was skinned post mortem.  A portion of a dowel rod was found in Paul's head, and some brain tissue was found outside the body. 

Both of the court-appointed psychiatrists testified that Joseph was unable to appreciate the wrongfulness of the murder when he committed it.  The State's expert agreed.  In rebuttal, the State offered the deposition of Joseph's ex-wife, which was admitted over defense counsel's remoteness, hearsay, and privilege objections, and which recounted incidents of domestic violence and alcohol abuse.  Next, the mother of Joseph's son testified that Joseph said the way to keep social security disability benefits is to "know the right answers, act crazy."  (R. at 1218, 1231.)  Finally, the State presented letters to relatives written by Joseph while he was in jail awaiting trial.  In the letters, Joseph expressed guilt and remorse, and he claimed temporary insanity.

I. The Defense of Insanity

Joseph Garner admitted at trial that he killed his father but asserted insanity as an affirmative defense.  Now, Garner claims that the trial court erred in denying his motion for judgment on the evidence because he claims he met his burden of proving insanity and the State did not present evidence to overcome his proof.  Garner also argues that his motion was incorrectly denied because the State did not establish that he could appreciate the wrongfulness of his actions when he committed them.  

Indiana places the burden of proof on the defendant to establish the defense of insanity by a preponderance of the evidence.  Ind. Code Ann. § 35-41-4-1(b) (West 1998).  
Furthermore, in order to prevail on appeal, "[a] convicted defendant who claims his insanity defense should have prevailed at trial is in the position of one appealing from a negative judgement.  We will reverse only when the evidence is without conflict and leads to but one conclusion which the trier of fact did not reach."  
Rogers v. State
, 514 N.E.2d 1259, 1260 (Ind. 1987).  
  

The trial court correctly denied Garner's motion.  First, although Garner offered evidence of mental illness, the State has no obligation to offer evidence which disproves mental illness in order to meet 
its
 burden of proving Garner guilty beyond a reasonable doubt.  
Cate v. State
, 644 N.E.2d 546, 548 (Ind. 1994). To require the State to disprove mental illness would shift the burden of proof of insanity, controverting the General Assembly's placement of that burden on the defendant.  Ind. Code Ann. § 35-41-4-1(b) (West 1998). 

Second, the trial court did not err in denying Garner's motion because sufficient probative evidence suggested that the defendant was not insane at the time of the murder.  The determination of insanity is a question for the trier of fact, who may elect to credit the testimony of lay witnesses over that of medical experts.  
Gambill v. State
, 675 N.E.2d 668 (Ind. 1996).  In 
Gambill
, this Court upheld a verdict finding no mental illness when four medical experts testified that the appellant was legally insane and two lay witnesses testified otherwise.  
Id.
  Similarly in this case, despite the testimony of the medical professionals, the jury could 

have found that Garner was not insane based on the other evidence available.  

The State offered evidence showing that Garner was not insane at the time of the crime.  First, the State presented evidence that Garner remembered the alleged childhood sexual abuse well before the murder, rather than directly before the act as Garner alleges.  This evidence included a statement Garner made to Amanda that his father had sodomized him as a child and a statement Garner made to Doris McMoningle, who later testified, discussing his previous childhood sexual abuse.  Second, the State introduced evidence of prior physical altercations between Garner and his father which demonstrated a hostile relationship.  Third, one of the psychiatrists testified on cross-examination that during the assault which led to the murder, Garner's father asked him to leave and he did for a brief time, suggesting that Garner could tell right from wrong.  The jury was free to rely on any one of these pieces of evidence and disregard the testimony of the expert witnesses.  
Gambill
, 675 N.E.2d 668; 
see also
 
Dean v. State
, 551 N.E.2d 452, 454 (Ind. 1990) (jury may credit lay testimony over that of expert witnesses). 

 Despite the fact that Garner presented ample evidence of his insanity, the court was within its discretion to deny Garner's motion because the jury had sufficient evidence to reject Garner's claim.   

II. Evidence of Garner's State of Mind 

Before the Crime and After 

Treatment and Medication

Garner objected at trial and now challenges on appeal the admission of (1) a deposition by his ex-wife concerning prior domestic and alcohol abuse; (2) testimony by his son's mother that he feigned "craziness" to keep social security benefits, and (3) letters to family members written while he was in jail awaiting trial, expressing guilt and claiming insanity.  His objections include remoteness in time, hearsay, character propensity, undue prejudice, and relevance. 

When the defense of insanity is raised, evidence which may otherwise be inadmissable may be admitted.  
Gregory v. State
, 540 N.E.2d 585, 591 (Ind. 1989).  "Once a defendant offers an insanity plea, all [relevant] evidence is deemed admissible.  Even evidence which is otherwise incompetent or immaterial may be admitted to show the mental state of the defendant."  
Id.
 (quoting 
Wood v. State
, 512 N.E.2d 1094, 1098 (Ind. 1987)).  Evidence need only be relevant to the claim of insanity to be admissible.  
Anderson v. State
, 615 N.E.2d 91 (Ind. 1993).  

Relevant evidence is evidence having any tendency to make a fact of consequence more or less probable.  Ind.Evidence Rule 401.  That Garner's previous relationship with his wife was marked with violence strengthens the State's proposition that the rage towards his father is less attributable to insanity.  Allegations of faking "craziness" to claim benefits may establish a pattern that Garner feigns mental illness, thereby raising doubt about the sincerity of his insanity claim.  The letters Garner wrote from jail discuss the onset of his alleged insanity and are therefore relevant to that issue.  Because the evidence Garner contests does make his claim of insanity more or less probable, that evidence is relevant and was therefore properly admitted.

III. The Sixty-Five Year Sentence

Garner argues that his sentence should be reduced because it is extreme and unreasonable.  He further asserts that some of the aggravating circumstances found by the court were products of his mental illness and should not have been considered.  

The presumptive sentence for the crime of murder is fifty-five years, and it is within the discretion of the trial court to either add or subtract ten years for aggravating and mitigating circumstances.  Ind. Code Ann. § 35-50-2-3(a) (West 1998);  
Morgan v. State
, 675 N.E.2d 1067, 1073 (Ind. 1996).  In this case the trial court found the following aggravating circumstances: the risk Garner will commit another violent crime, Garner's history of delinquent activity, Garner's need of correctional or rehabilitative treatment that can best be provided in prison,  Garner's danger to society, and the advanced age of the victim.  The court found Garner's mental illness as a mitigating factor and concluded that the aggravating factors outweigh the mitigating factors.  Accordingly, it added ten years to the presumptive sentence with three years to be served on probation in an in-patient mental treatment facility.

This Court has the authority to review and revise criminal sentences.  Ind. Const. art VII, § 4.  We exercise that authority under the restraint of Indiana Appellate Rule 17, which declares that revision should occur only when the sentence is "manifestly unreasonable" in light of the nature of the offense and the character of the offender.  The trial court is not required to accept Garner's formulations of what constitutes mitigating circumstances.  
Ross v. State
, 676 N.E.2d 339, 347 (Ind. 1996).  It is apparent from the record that the trial court considered Garner's mental illness.  In light of the multiple aggravating factors, we conclude that it was not manifestly unreasonable to add ten years to the presumptive sentence. 

Conclusion

We affirm the judgment of the trial court.

Dickson and Boehm, JJ., concur.

Sullivan, J., with whom Selby, J., joins, concurs except as to part three, from which he dissents believing that a sentence of this magnitude was not justified given the jury's unanimous finding that the defendant was mentally ill.