Marvin D. CASTOR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89S00–9803–CR–182.

Supreme Court of Indiana.

Sept. 13, 2001.

Andrew C. Maternowski, Indianapolis, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## ON DIRECT APPEAL

RUCKER, Justice

A jury convicted Marvin D. Castor of murder, and the trial court sentenced him to death. In the initial direct appeal, this Court affirmed Castor's conviction but remanded for resentencing. After a new sentencing hearing, the trial court sentenced Castor to sixty years imprisonment. In this appeal, Castor contends his sentence is manifestly unreasonable in light of his mental illness. We disagree and therefore affirm.

### Factual and Procedural History [1]

In May 1986, Castor worked as a salesman for the Sugar Creek Resort located near Greenfield, Indiana. The Resort was affiliated with a business entity known as Collett Ventures. Castor and his brother, who also worked for the Resort, obtained and reviewed a number of documents concerning Collett Ventures. They concluded that their employer was engaged in defrauding lending institutions. Castor decided to approach a representative of Collett Ventures and request $250,000 in exchange for the documents.

In a May 6th meeting with Bill Collett, Castor's superior at Collett Ventures, Castor demanded payment in exchange for the documents. After Castor left the office, Collett reported the incident to the Hancock County Sheriff's Department, which in turn contacted the Federal Bureau of Investigation. The following day the FBI recorded telephone conversations between Castor and at least two representatives from Collett Ventures. During the conversations Castor said he believed Collett Ventures had sent "hit men" to his house with the intent to injure him. Castor also said that he was armed to the teeth and that the "hit men" would not intimidate him. The Collett Ventures representatives assured Castor there were no "hit men" after him but that his extortion attempt had been reported to the police. They also discussed with Castor arrangements for paying the money he demanded.

The next day Castor waited in his pickup truck at the agreed upon location. Malcolm Grass, a Hancock County deputy sheriff, and a number of FBI agents arrived to arrest Castor. All the officers arrived in unmarked vehicles, and none wore uniforms. Witness accounts vary concerning when or whether the officers announced they were either police or FBI. In any event, the only visual identification showing the men were law enforcement personnel was a hat worn by one officer emblazoned with the letters "FBI."

Both Castor and deputy sheriff Grass exited their vehicles with weapons drawn.

---

1. A more detailed summary of the facts can be found in Castor's original appeal. *See*

*Castor v. State,* 587 N.E.2d 1281, 1283–85 (Ind.1992).

As they faced each other, Castor fired at least two shots. One bullet struck Grass in the head. He died as a result. Castor ultimately surrendered. As the FBI agents arrested him, Castor asked if they were members of the Mafia. He also said that he believed the agents were "hit men."

The State charged Castor with murder and sought the death penalty because Grass was a law enforcement officer acting in the course of his duty.[2] A jury convicted him as charged and after the penalty phase of the trial, recommended that the death penalty be imposed. The trial court accepted the recommendation and sentenced Castor to death.

On direct appeal in 1992, this Court affirmed Castor's conviction for murder but reversed the sentence of death and remanded the case to the trial court for a new penalty phase hearing. *Castor*, 587 N.E.2d at 1290. On remand, Castor's incompetency to stand trial caused a lengthy series of delays. Ultimately in 1996, the trial court found Castor competent and conducted a new sentencing hearing. The trial court found three aggravating factors: (1) substantial risk that Castor will commit another crime of the same magnitude as murder; (2) Castor knew Grass was a law enforcement officer acting in the course of duty when he was murdered; and (3) Castor was in need of correctional and rehabilitative treatment that could best be provided by long-term commitment to a penal facility. The trial court found only one mitigating factor—no history of criminal activity. Concluding that the aggravating factors outweighed the single mitigating factor, the trial court sentenced Castor to an enhanced term of sixty years. This appeal ensued in due course.

## Discussion

■ Castor contends his sentence is manifestly unreasonable in light of his mental illness. He specifically argues that the trial court failed to consider his severe mental illness as a significant mitigating factor. Castor also complains the trial court did not adequately articulate its reasons for using the "in need of correctional or rehabilitative treatment" aggravator. Determination of sentences is a matter of discretion for the trial court. *Young v. State*, 696 N.E.2d 386, 391 (Ind.1998). However, when deciding to enhance a sentence, the court must state all significant aggravating and mitigating factors and articulate the balancing process by which it determined that the aggravating factors outweighed the mitigating ones. I.C. § 35-38-1-7.1; *Harris v. State*, 659 N.E.2d 522, 527-28 (Ind.1995).

■ A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind.2000); *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999). Here, Castor argues that the facts surrounding the deputy sheriff's killing, combined with Castor's competency evaluations, show that he was mentally ill at the time of the crime. Castor points to his "hit men" references and his belief that Collett Ventures was involved in illegal activity to support his claim that the "entire tragedy is a product of [ ] mental illness." Br. of Appellant at 19.

Castor has not carried his burden of proof. First, even if his conduct in 1986 could be described as bizarre or unusual, that does not necessarily mean that Castor was mentally ill at the time. *See, e.g.,*

---

**2.** *See* Ind.Code § 35-50-2-9(b)(6)(A) (listing law enforcement officer killed while acting in the course of duty as an aggravating factor for which the State may seek a death sentence or a sentence of life imprisonment without parole).

*Allen v. State,* 716 N.E.2d 449, 455 (Ind. 1999) (finding defendant guilty despite claim of insanity based in part on testimony that defendant heard a voice telling him to commit the crime); *Garner v. State,* 704 N.E.2d 1011, 1014 (Ind.1998) (rejecting defendant's claim of insanity even though he acted strangely prior to committing a murder). Nor does the fact Castor was subjected to eight competency evaluations between 1992 and 1996 demonstrate that he was mentally ill at the time of the crime. The record does show that at various times mental health professionals either testified or submitted reports concluding Castor suffered a mental illness and was thus unable to assist counsel in his defense. However, there was no testimony that Castor was mentally ill at the time the crime was committed. For example, Dr. Richard Lawlor, a clinical psychologist at the Indiana University School of Medicine, was one of the mental health professionals who examined Castor on the question of his competency to stand trial. In a November 1994 hearing, counsel for Castor inquired whether it was possible that Castor suffered a mental illness at the time of the crime. Dr. Lawlor responded: "I don't know whether that would be true or not.... And I think that he was probably able, if it did exist at that time, to maintain outward control during those periods of time with the help of what seems to be a significant amount of intelligence." R. at 2371.

■ It is true that mental illness at the time of the crime may be considered a significant mitigating factor. *Mayberry v. State,* 670 N.E.2d 1262, 1271 (Ind.1996). However, in this case whether Castor actually suffered a mental illness in May 1986 is not clearly supported by the record. On this point we find no error in the trial court's sentencing.

■ As for Castor's complaint that the trial court did not adequately articu-late its reasons for imposing the "in need of correctional or rehabilitative treatment" aggravator, the law provides that when relying on this aggravator, a trial court must articulate why the specific defendant requires corrective or rehabilitative treatment that could best be provided by commitment to a penal facility for a period of time in excess of the presumptive sentence. *Ford v. State,* 718 N.E.2d 1104, 1107 (Ind.1999). The record shows the trial court cited this aggravator because Castor "has been incarcerated since May 1986, and Defendant continues to make threats of killings while awaiting trial on the murder charge, and after conviction of murder and awaiting retrial on the penalty phase...." R. at 3174–75. This statement identifies Castor's subsequent conduct as justification for the imposition of the aggravator and is sufficient to support its use by the trial court.

■ The Indiana Constitution confers upon this Court the power to review and revise sentences. Ind. Const. art. 7, § 4. However, we will not revise a sentence unless it is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B) (formerly App.R. 17(B)); *Johnson v. State,* 734 N.E.2d 242, 246 (Ind. 2000). In this case we conclude that a sixty-year sentence for murdering a law enforcement officer in the performance of his duty, knowing that he was in fact an officer, is not manifestly unreasonable.

### Conclusion

We affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.