Rosalind R. BOWMAN, Appellant–Plaintiff,

v.

Harold E. SMOOT, Appellee–Defendant.

No. 53A01–0308–CV–314.

Court of Appeals of Indiana.

April 20, 2004.

David J. Colman, Elizabeth Ann Cure, Colman & Cure, Bloomington, IN, Attorneys for Appellant.

Joseph D. O'Connor, III, Holly M. Harvey, Bunger & Robertson, Bloomington, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Rosalind R. Bowman (Bowman), appeals from the trial court's denial of her Motion for Relief from Judgment pursuant to Ind. Trial Rule 60(B).

We affirm.

### ISSUE

Bowman raises one issue on appeal, which we restate as follows: Whether the trial court erred in denying her Motion for Relief from Judgment.

### FACTS AND PROCEDURAL HISTORY

In April of 1997, Bowman filed a complaint against Appellee–Defendant, Harold Smoot (Smoot), for alleged injuries arising from an automobile accident. In December of 2000, the trial court conducted a jury trial in the matter. During the trial, Smoot's legal counsel mentioned to Bowman's legal counsel that "all of the jurors seemed to come from the same very [ ] closely defined geographic area," that being Smithville in Monroe County. (Transcript pp. 5–6). Smoot's legal counsel also mentioned his observation to the Monroe County Court Programs Coordinator, Lisa Abraham (Abraham), who is responsible for compiling the jury venire. Neither side subsequently objected to the jury panel or moved for a mistrial based on the composition of the jury. On December 14, 2000, at the conclusion of a three-day jury trial, the jury entered its verdict in favor of Smoot.

Between the time Smoot's legal counsel notified her of the oddity during the trial and sometime before the end of the year 2000, Abraham initiated an investigation of the Bowman/Smoot jury venire to determine whether there was a glitch in the computer program used for jury selection. Subsequent to her investigation, Abraham discovered that the computer program performed differently than she had anticipated, thereby resulting in the somewhat peculiar makeup of the Bowman/Smoot jury venire.

The computer program is designed to select names randomly from the lists of registered voters in Monroe County's 91 precincts. Prior to the first quarter of 2001, Abraham understood the computer program to function as follows: each quarter of the year, Abraham requests 1000 names to use as prospective jurors for juries scheduled in the Monroe County Court during those three months. The computer program then requires her to input two numbers that are randomly drawn a year earlier by each of the two jury commissioners in Monroe County. Once Abraham inputs the two numbers, the computer program "scrambles" all of the names of registered voters in Monroe County and then utilizes the two numbers in compiling the ultimate list of 1000 prospective jurors. (Tr. p. 21). For instance, if the two numbers were 10 and 14, the

computer program would select the tenth name on the scrambled list of voters' names and then proceed through the list and select every fourteenth name thereafter until it had compiled 1000 names.

After the computer program has generated a list of 1000 names, Abraham mails questionnaires to everyone on the list. Of those 1000 questionnaires, on average, 350 will be returned to Abraham who then identifies them on the computer program. The list of 350 prospective jurors is then divided into three groups of approximately 120—one group of prospective jurors for each month of the quarter. Subsequently, as Abraham needs prospective jurors for a trial, she has the computer program select 18 prospective jurors from the group of 120. Those 18 people are then told to report for jury duty.

In the instant case, however, through her investigation, Abraham found that, with regard to the list of 1000 names selected for the fourth quarter of the year 2000, the computer program did not scramble the names, as expected; rather, it skipped to the 10th name on the unscrambled list of voters in the 88th precinct and proceeded in order through the unscrambled precinct lists to select every fourteenth name until 1000 names were selected. As a result, the 1000 names selected for the fourth quarter of 2000 derived from 22 of 91 precincts in Monroe County, instead of all 91 precincts, as expected. In addition, when Abraham eventually requested the computer program to supply her with 18 names for the Bowman/Smoot jury venire, 15 of the prospective jurors lived in precinct 88 and 2 lived in precinct 85.[1] Abraham reported her findings to the presiding judge of the Monroe County Court. The presiding judge then worked with Abraham to figure out how to run the jury selection program more in line with their expectations.

Meanwhile, between December 14, 2000, and January 16, 2001, Bowman did not inquire into or perform any investigation of the jury selection process. However, on January 16, 2001, Bowman filed her Motion to Correct Error in the Monroe County Circuit Court. Among the errors alleged in her motion, Bowman argued "[t]he jury panel called in this case was not properly representative of all of Monroe County as all of the prospective panel of jurors was from the Smithville area of Monroe County. [Bowman], not a resident of Smithville, was prejudiced by the improper and nonrepresentative selection of jurors for her case." (Appellant's App. p. 16). The trial court denied Bowman's Motion to Correct Error on January 24, 2001.

Thereafter, on December 14, 2001, Bowman filed her Motion for Relief from Judgment pursuant to T.R. 60(B). In her motion, Bowman alleged that, since the filing of her Motion to Correct Error, she discovered new information regarding a "fatal flaw" in the computerized selection of the jury in her case. (Appellant's App. p. 18). She asserted that this fatal flaw deprived her of her right to a jury of her peers and that, as a result, the trial court was required to set aside the jury's verdict and grant her a new trial. On March 1, 2002, the trial court conducted an evidentiary hearing on Bowman's motion. The trial court subsequently denied Bowman's Motion for Relief from Judgment on March 31, 2003. This appeal ensued.

Additional facts will be supplied as necessary.

### DISCUSSION AND DECISION

Bowman asserts that the trial court abused its discretion in not granting

---

1. One of the 18 failed to appear for jury duty.

her T.R. 60(B) Motion for Relief from Judgment. A motion for relief from judgment under T.R. 60(B) is entrusted to the sound discretion of the trial court. *Centex Home Equity Corp. v. Robinson*, 776 N.E.2d 935, 941 (Ind.Ct.App.2002). When considering a T.R. 60(B) motion, the trial court must weigh the alleged inequity that would result by allowing a judgment to stand against the interests of the prevailing party in its judgment, as well as those of society at large in the finality of litigation in general. *Id.* at 942. On review, we neither reweigh the evidence nor substitute our judgment for that of the trial court. *Id.* at 941–42. We will reverse the trial court's decision only if it is squarely opposed by the logic and effect of the facts and circumstances. *Id.* at 942.

■ In support of her contention that the trial court abused its discretion in not granting her T.R. 60(B) motion, Bowman contends that even if her trial counsel attempted to investigate the matter, no information would have been available to explain the composition of the jury venire. Bowman cites to the testimony of Abraham that she was unaware that the computer program performed differently than expected until after she completed her investigation of the matter. However, we find Bowman's argument without merit.

The relief for which Bowman seems to argue, without ever specifically saying so, is found in T.R. 60(B)(2), which states that relief may be granted on "any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct error under Rule 59." In moving for relief from judgment under this provision, the burden of proof is on Bowman to establish the grounds for relief. *Indiana Ins. Co. v. Insurance Co. of North America*, 734 N.E.2d 276, 279 (Ind.Ct.App.2000).

Our review of the record shows that the weight of the evidence is clearly against Bowman.

Specifically, at the evidentiary hearing on Bowman's T.R. 60(B) motion, Bowman's trial counsel, Craig Benson (Benson), testified that he first became aware of the fact that most of the jurors lived in the same geographical area during a break in the second day of the trial. Benson verified that he conducted no independent investigation concerning the selection process of the jury venire used in the Bowman/Smoot trial and did not object to or move for a mistrial based on the composition of the jury panel at trial. In addition, Abraham testified that she investigated the performance of the computer program after the trial. Abraham's testimony indicates that she was aware the computer program had not performed as expected with regard to the Bowman/Smoot jury venire prior to the first quarter of 2001.

Bowman had 30 days from the December 14, 2000 jury verdict in which to file her Motion to Correct Error. T.R. 59(C). In fact, she timely filed her motion on January 16, 2001, and raised the composition of the jury venire as an error. However, we find that the existence of an aberration in the computer program used to generate the jury venire in the Bowman/Smoot trial was available to be discovered by Bowman well before her deadline for filing a motion to correct error. Bowman simply failed to exercise due diligence in discovering this information. Consequently, we find no abuse of discretion in the trial court's denial of Bowman's Motion for Relief from Judgment.

Moreover, we find that Bowman fails to demonstrate that the aberration in the computer program is reversible error. In the instant case, Bowman argues that a fatal flaw in the computerized method of selecting prospective jurors for her case

obliterated the diversity of prospective jurors in Monroe County with regard to income, racial composition, age, occupation, and virtually every other criteria. (Appellant's Br. p. 6). Bowman argues that, as a result, the jury selection process failed to satisfy statutory criteria and violated her Sixth Amendment right to have a representative cross-section of the community from which to select her jury panel.

■ First, with regard to her Sixth Amendment claim, we note that Bowman, as a claimant in the instant civil cause of action, has no Sixth Amendment right to violate. The Sixth Amendment to the U.S. Constitution states as follows:

> In all *criminal prosecutions,* the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

(emphasis added). Thus, the Sixth Amendment speaks to those accused in criminal prosecutions, not parties to civil actions. Therefore, the protections provided by the Sixth Amendment are available only in criminal prosecutions. *Freidline v. Civil City of South Bend,* 733 N.E.2d 490, 494 (Ind.Ct.App.2000). In other words, if an individual is subjected to a civil proceeding and sanction, that individual is not entitled to the constitutional protections of the Sixth Amendment to the U.S. Constitution. *Id.*

■ Furthermore, with regard to Bowman's assertion that the computerized jury selection process in her case failed to satisfy statutory criteria of a representative cross-section of the community, we likewise disagree. Indiana Code section 33–4–5–2 establishes the method by which jury venires are selected in Indiana and requires that "the system utilized for the selection system must be fair and may not violate the rights of persons with respect to the impartial and random selection of prospective jurors." I.C. § 33–4–5–2(c). Our supreme court has determined that this requirement "ultimately turns on an issue very similar to a Sixth Amendment analysis: whether the flaws in a jury selection system are so minor as to be inconsequential or are material enough that a segment of the population has been materially excluded." *Azania v. State,* 778 N.E.2d 1253, 1259–60 (Ind.2002).

■ The primary goal of jury selection procedures is to assure that a diverse group of citizens or a fair cross-representation of the community is chosen to sit on a jury. *Smith v. State,* 658 N.E.2d 910, 914 (Ind.Ct.App.1995), *trans. denied.* However, this court has refused to hold that a jury panel must constitute a microcosm of a county or a court district. *Griffin v. State,* 695 N.E.2d 1010, 1013 (Ind.Ct. App.1998). Rather, the statutory selection methods are designed to remove any suspicion of favoritism or advantage in the jury selection process. *Id.* Consequently, minor irregularities in compliance with jury selection statutes do not constitute reversible error. *Smith,* 658 N.E.2d at 914; *see also Williams v. State,* 555 N.E.2d 133, 138 (Ind.1990); *Owen v. State,* 272 Ind. 122, 125, 396 N.E.2d 376, 379 (Ind.1979); *Terry v. State,* 602 N.E.2d 535, 545 (Ind.Ct.App.1992). Substantial compliance with the statutory requirements is sufficient so long as the selection system used is impartial and not arbitrary. *Smith,* 658 N.E.2d at 914.

Here, Bowman fails to specify how the jury venire in the Bowman/Smoot trial does not represent a cross-section of citizens in Monroe County. To the contrary, she merely asserts, "[t]he narrow socio[-]economic segment reflected by the flawed jury pool completely obliterated the diversity of Monroe County in income, racial composition, age, occupation, and virtually every other criteria." (Appellant's App. p. 6). We find her bald accusation without merit. Consequently, we hold that Bowman fails to demonstrate that the jury selection process utilized in the instant case does not substantially comply with the statutory requirements of I.C. § 33-4-5-2.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Bowman's Motion for Relief from Judgment.

Affirmed.

DARDEN, J., and BAILEY, J., concur.