**Herman Edward WADE, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 984S369.**

Supreme Court of Indiana.

Sept. 16, 1985.

Peter L. Benjamin, Patrick A. Schuster, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Kenneth P. Williams, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

This is an appeal from a jury conviction of Murder, Ind.Code § 35–42–1–1 (Burns 1985 Repl.). Appellant was sentenced to a thirty-one (31) year term of imprisonment. His sole issue concerns the sufficiency of the evidence to establish: (1) appellant intentionally shot the victim; and (2) appellant was not acting in self-defense.

The facts are: On the evening of February 22, 1983, the decedent, Frederick Walters, went to appellant's house. Appellant and decedent began to argue regarding a debt appellant apparently owed the decedent. Appellant's cohabiting fiancee, Mary Matthews, had been sleeping in the bedroom when she was awakened by their loud voices. Dorian McCoy was also present in another room of appellant's house.

Appellant's statement to the police and McCoy's trial testimony indicated that decedent threatened "to do something to" appellant if decedent did not get his money. Appellant told decedent several times to leave his house. Decedent then put his hand in his jacket pocket and walked toward appellant. Appellant claims knowledge that decedent would often carry a gun in his jacket pocket. Appellant ran into his bedroom to get his single-shot shotgun. Appellant shot the decedent once, reloaded, and shot the decedent a second time. Neither Matthews nor McCoy witnessed the shooting.

Appellant called the police to report the shooting. The police searched the rooms, which were in order and undisturbed, but did not find any other weapon. The deputy coroner, Ron Borden, searched decedent's body at the crime scene but did not find any type of weapon. Young Kim, a pathologist with the coroner's office, testified either shotgun wound would have caused death. Kim also testified that a person would not be able to remain standing or be capable of moving forward after receiving one of these shotgun wounds.

After the State's case-in-chief, appellant moved for a directed verdict. This motion was predicated on the State's alleged failure to negate appellant's claim of self-defense. Appellant argues the State's evidence merely establishes a possible manslaughter charge rather than a murder charge. The State counters that while the first shot may have been in self-defense the second shot was fired when decedent was helpless and no longer a danger to appellant.

After the trial court denied this motion, appellant presented evidence to substantiate his claim of self-defense. After Matthews was awakened by the appellant-decedent argument, she heard appellant tell decedent to leave appellant's house. Matthews also heard appellant tell decedent to take his hand out of his jacket. When decedent had been at appellant's house on previous occasions, Matthews saw decedent take a handgun out of his jacket. McCoy testified he never heard decedent threaten to kill appellant but did hear decedent threaten "to do something to" appellant. Appellant testified he was scared and panicked at the time of the shooting. Appellant claims he fired a second shot because he was not sure if the first shot hit decedent. Appellant claims decedent was still standing after the first shot. After appellant fired the second shot decedent staggered backward across the living room and fell onto the floor pillows.

Appellant also introduced an application for the "emergency detention of a mentally ill and dangerous person" which decedent's father made on January 10, 1983, to have decedent detained for a psychiatric disorder. This was to corroborate appellant's police statement and trial testimony that appellant was informed of decedent's prior mental health problems. Appellant's self-defense claim is essentially predicated on: (1) knowledge decedent had prior mental health problems, although previously decedent had never exhibited bizarre behavior; (2) the argumentative and irrational behavior exhibited by decedent at appellant's house the night of the shooting; (3) dece-

dent's statement which was construed by appellant to be a threat; and (4) decedent's gestures which were deemed to be threatening to appellant, since decedent allegedly carried a handgun in his jacket pocket.

■ This Court will not weigh conflicting evidence or judge the credibility of witnesses. *Rhinehardt v. State* (1985), Ind., 477 N.E.2d 89.

■ The necessary intent to commit murder is inferable from the deliberate use of a deadly weapon in a manner reasonably calculated to cause death. *Brewer v. State* (1983), Ind., 455 N.E.2d 324; *Ballard v. State* (1982), Ind., 438 N.E.2d 707. The unarmed decedent sustained two shotgun wounds from a relatively close distance. Medical testimony established one wound was sufficient to cause death and also the improbability decedent could remain standing after sustaining the first injury. Under this Court's standard of review, the evidence was sufficient for the jury to infer appellant intentionally murdered the decedent.

■ To prevail on a self-defense claim appellant must show: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear or apprehension of death or great bodily harm. *Hinkle v. State* (1984), Ind., 471 N.E.2d 1088. Deadly force is justified only when the user reasonably believes it is necessary to prevent serious bodily injury to himself. Ind.Code § 35–41–3–2 (Burns 1985 Repl.). After a self-defense assertion is made the State has the burden to controvert appellant's defense by disproving one of the aforementioned criteria beyond a reasonable doubt. The State may satisfy this burden by affirmatively showing appellant did not act in self-defense or by relying upon the sufficiency of the State's evidence in chief. *Davis v. State* (1983), Ind., 456 N.E.2d 405.

■ Sufficient evidence was introduced by the State to negate appellant's claim of self-defense. Assuming appellant reasonably feared decedent would seriously injure appellant, medical testimony indicated dece-

dent would no longer have been a threat to appellant after decedent sustained the first shotgun wound. The degree of force which would be reasonably justifiable under the circumstances is a question of fact for the jury. The jury obviously concluded the degree of force exercised by appellant exceeded the bounds of justifiable force. The State presented sufficient evidence to negate beyond a reasonable doubt at least one of the elements of appellant's self-defense claim.

The trial court is affirmed.

DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.

SHEPARD, J., not participating.