Michael S. BOCKTING, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 13A05–9104–CR–128.[1]

Court of Appeals of Indiana,
First District.

May 11, 1992.

Transfer Denied June 24, 1992.

Steven E. Ripstra, Lytton and Ripstra, Jasper, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Michael S. Bockting appeals his conviction and sentence for

2. IND.CODE 35–42–1–5.

reckless homicide,[2] a Class C felony. Bockting raises the following eight challenges to his conviction:

I.   Whether newly discovered evidence permitted the state to charge Bockting after a grand jury had previously returned a "no bill" against him.

II.   Whether the jury engaged in misconduct.

III.   Whether the trial court erred in quashing a subpoena.

IV.   Whether sufficient evidence existed to warrant a jury instruction concerning the federal Gun Control Act.

V.   Whether sufficient evidence exists to support Bockting's conviction for reckless homicide.

VI.   Whether Bockting's self-defense claim entitled him to acquittal as a matter of law.

VII.   Whether the trial court erred in admitting Bockting's deposition testimony into evidence.

VIII.   Whether the trial court abused its discretion by enhancing the presumptive sentence given Bockting.

### FACTS

The facts most favorable to the jury's verdict follow. On April 24, 1984, the victim, Tommy McDonald, a 43 year-old man with a history of mental dysfunction, walked to the Bocktings' home and while brandishing a gun demanded that Bockting's mother show herself. She was not home, however, and McDonald left.

Michael Bockting returned home shortly thereafter and learned of McDonald's actions. He grabbed a handgun, got in his truck, and sought McDonald. After a while he found McDonald walking down a lane. McDonald was no longer armed, but made threatening gestures to Bockting while the latter was still in his truck. When McDonald rushed the truck, Bockting shot him. A month later, McDonald died of the wound. On June 14, 1984, a grand jury was convened, but it returned a

"no bill," finding that Bockting acted in self-defense.

Four years later Bockting was a witness for the state in the case *State of Indiana v. Phillip Woolems*. During a deposition Bockting was asked, "Why was is that you shot Mr. McDonald?" He replied, "Because Mr. Woolems had Mr. McDonald to try to waste my mom, take her out, or however you want to word it, because she knew too much on him." *Record* at 335. Bockting then went on to relate some of the long and ugly history his family had with Phillip Woolems.

Based on Bockting's deposition testimony, charges of murder, voluntary manslaughter, involuntary manslaughter, reckless homicide, and battery were filed against him. Bockting moved to dismiss the information against him based on the grand jury's earlier action, arguing no new evidence had been discovered. His motion was denied, as was his motion to suppress his deposition testimony. At trial, Bockting did not testify. A jury convicted him of reckless homicide, and the trial court sentenced him to the presumptive four year sentence, enhanced by an additional four years, with four suspended. Bockting now appeals his conviction and sentence.

## DISCUSSION AND DECISION

### I

### Information

Bockting first argues the information against him should have been dismissed because it was defective inasmuch as a grand jury had already considered the matter and returned a "no bill."

IND.CODE 35–34–1–4 allows the trial court to dismiss an indictment or information on certain enumerated grounds, including defectiveness. IND.CODE 35–34–1–6 reads, in relevant part, as follows:

\* \* \* \* \* \*

(b) An information is defective if:

\* \* \* \* \* \*

(3) The grand jury proceeded to deliberate on whether to issue an indictment, and voted not to indict the defendant for the offense identified on the record under IC 35–34–2–12(a)(2).

However, if the prosecuting attorney shows that there is newly discovered material evidence that was not presented to the grand jury before the grand jury's failure to indict, then the information is not defective.

Bockting's statement, given some four years after the grand jury met, that he shot McDonald because McDonald had been sent to kill Mrs. Bockting, is newly discovered evidence. Although the statute does not define "newly discovered evidence" and we know of no reported Indiana cases addressing the issue in the context of a grand jury proceeding, in the context of a new trial, "newly discovered evidence" is that evidence which has been discovered since trial, is material and relevant, is not cumulative, is not merely impeaching, is not privileged or incompetent, was not discoverable upon due diligence in time for trial, is worthy of credit, can be produced upon retrial of the cause, and will probably produce a different result. *Bustamante v. State* (1990), Ind., 557 N.E.2d 1313.

Bockting's statement easily qualifies as newly discovered evidence under these requirements. The · evidence is "new" inasmuch as Bockting claimed self-defense at the grand jury hearing and failed to mention the explanation he later gave. We would suggest, however, the test for whether evidence is "newly discovered" should be more rigorous when applied in the adversarial context of new trials than when applied in the context of simply establishing probable cause for indictment. But because the evidence here is newly discovered under the more rigorous definition, our inquiry ends; we have no need to develop the less stringent definition for the IND.CODE 35–34–1–6 context.

Bockting argues that even if the deposition testimony is newly discovered evidence, it is not material to the charges. "It adds nothing to Bockting's motive not previously provided to the grand jury," he argues. We disagree. Bockting's statement adds a great deal—insight into Bock-

ting's motive for shooting McDonald. It suggests an element of forethought. It is "material" because it facilitates the resolution of the issues involved. *Havert. v. Caldwell* (1983), Ind., 452 N.E.2d 154.

Bockting's argument that he did not know of the Woolems–McDonald relationship until after the grand jury met is irrelevant to the issue of whether the information was defective. Exactly when Bockting first learned Woolems sent McDonald to kill Bockting's mother was a question of fact which Bockting had the opportunity to address during the hearing on his motion to dismiss and again at trial. Once Bockting claimed he shot McDonald because McDonald had been sent to kill his mother, Bockting incriminated himself and gave the prosecution justification to file charges based on newly discovered evidence. The information was not defective, and the trial court did not err in refusing to dismiss it.

## II

### Jury Misconduct

Bockting argues the jury engaged in misconduct during its deliberations and that therefore he is entitled to a new trial. He claims first that the jury, while in the jury room, reviewed a medical book and a dictionary not in evidence and second, that one of the jurors, Mr. Cook, knew McDonald and his family and discussed some of that knowledge with the other jurors.

"Indiana adheres to the common law rule that a verdict may not be impeached by evidence from the jurors who returned it." *Harrison v. State* (1991), Ind.App., 575 N.E.2d 642, 646. A notable exception occurs when evidence shows that the jury was exposed to improper, extrinsic material during its deliberations, *Fox v. State* (1984), Ind., 457 N.E.2d 1088, and when a substantial possibility exists that the verdict was prejudiced by the improper materi-

al. *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819; *Harrison, supra.*

The record in this case reveals Juror Montgomery brought the medical book and the dictionary into the jury room. At the hearing on the motion to correct error, Montgomery testified he brought the medical book to learn about pregnancy because one of the other jurors was pregnant and nearly due. He used the dictionary to learn the definition of the word "schizophrenia" out of "curiosity," *record* at 1849, and testified it had no bearing on the verdict. He testified some of the other jurors looked at the books "to pass the time." *Record* at 1850. All three of the jurors who testified affirmatively declared that their decision was not influenced by either the medical book or dictionary. Bockting has not shown a substantial possibility the verdict was prejudiced by the presence of the two books.

The trial court also questioned the jurors Bockting called about whether anything Juror Cook said concerning the McDonalds influenced their decision. All denied they were influenced, including Juror Elam, (to whom Bockting points in particular), who, when asked by the trial court, "Was there anything that Mr. Cook may have said at trial that would have affected your decision in this case?" answered ". . . as far as swaying me, no. . . ." *Record* at 1869–70. Finally, we observe that Bockting did not subpoena Juror Cook to testify personally and, moreover, that during voir dire Juror Cook disclosed the fact he already knew the Bocktings and the McDonalds.[3] As Bockting has not shown a substantial possibility the jury was improperly influenced, he has presented no error.

## III

### Subpoena

Bockting next argues the trial court erred by failing to require Juror Ridenour's appearance pursuant to the subpoena Bockting served upon him.

---

**3.** Although Cook's responses to the questions posed to him at voir dire were inaudible to the court reporter, the context of the questions which were recorded supports the conclusion that Cook disclosed his relationship. This conclusion is buttressed by the trial court's comment ". . . I believe the evidence would reflect that Mr. Cook on voir dire indicated that he generally knew the Bocktings and the McDonalds." *Record* at 1858. Because the voir dire was held *en masse* and not individually, other jurors presumably would have heard Cook's disclosure.

Because Juror Ridenour did not appear, the trial court allowed Bockting to submit an offer of proof. Bockting offered the following:

> Your honor, we would present testimony that would bear upon the following areas concerning Mr. Ridenour.... There would be testimony concerning Mr. Ridenour's allegations to Mr. Cook as to what he said concerning the background of the McDonald's and as to what he said as to the character of this defendant, although I think some of that testimony is already before the Court. The testimony form [sic] Mr. Ridenour or statements made by Mr. Ridenour as to the books that were brought into the jury room, one of them possibly being a law book....

*Record* at 1872–73. After hearing this statement and the other jurors' testimony, the trial court quashed the subpoena.

▬ Bockting now complains the trial court erred in quashing the subpoena. His attack must fail, however, because he has presented no record for us to review. To provide a basis for reversal, excluded testimony must appear in the record; this is done by making an offer to prove. *Hebel v. Conrail, Inc.* (1985), Ind., 475 N.E.2d 652. Bockting's generalized statements that Juror Ridenour would testify "as to what [Juror Cook] said as to the character of this defendant" and "as to the books that were brought into the jury room ..." are not an offer to prove. They prove nothing except upon what general subjects Juror Ridenour would testify were he present. To preserve the issue for appellate review, a party must make some showing of what the excluded evidence would have been. *Stath v. Williams* (1977), 174 Ind.App. 369, 367 N.E.2d 1120; *Kagan v. Auto–Teria, Inc.* (1976), 168 Ind.App. 314, 342 N.E.2d 890. Without specific evidence, we cannot rationally assess this allegation of misconduct. The issue is waived.

## IV

### Jury Instruction

▬ Bockting contends the trial court erred by instructing the jury that federal law prohibits a person on probation for conviction of a felony punishable by more than two years' imprisonment from possessing a firearm.

Bockting objected to the instruction as follows:

> Yes. (inaudible) we do object to that. It hink [sic] it causes undue emphasis to the exhibit that was submitted by the State of Indiana concerning the Defendant signing the notice of the Federal Gun Control Act and that particular ismore [sic] exclusive as to the definition of that (inaudible)[.]

*Record* at 1798. On appeal, however, Bockting claims there was insufficient evidence adduced at trial to support the giving of the instruction. Bockting has waived the issue for appellate review because at trial he argued undue emphasis but on appeal he argued insufficient evidence supported the giving of the instruction. A party may not assert one ground of objection at trial and argue a second on appeal. *Jester v. State* (1990), Ind., 551 N.E.2d 840.

## V

### Sufficiency of the Evidence

▬ Bockting argues his conviction was not supported by sufficient evidence. He is incorrect.

When reviewing sufficiency of the evidence claims, we neither reweigh evidence nor reassess witness credibility. We consider only the evidence most favorable to the verdict, together with all reasonable and logical inferences derivable therefrom. If there is substantial evidence of probative value supporting the verdict, we will not overturn it. *Byrd v. State* (1991), Ind. App., 579 N.E.2d 457.

To prove reckless homicide, the state is required to demonstrate that the defendant recklessly killed another human being. IND.CODE 35–42–1–5. A person acts recklessly when he engages in conduct in a plain, conscious, and unjustifiable disregard of harm that might result, and the

disregard involves substantial deviation from acceptable standards of conduct. IND.CODE 35–41–2–2(c); *McClaskey v. State* (1989), Ind., 540 N.E.2d 41.

Here, Bockting does not dispute the fact that he killed another human being. His contention centers on the element of recklessness: "Bockting went to find McDonald after discovering the overt threat to Bockting's mother. He took a pistol with him for protection. Upon being attacked by McDonald Bockting accidentally shot him. These are not unreasonable acts under the circumstances." *Brief of Appellant* at 26. In essence, Bockting asks us to reweigh the evidence and conclude, contrary to the jury's determination, that he did not act recklessly. We refuse. The jury heard evidence that after learning of McDonald's behavior, Bockting collected a pistol, went to search for McDonald, found him, and shot him. The jury heard Bockting's deposition testimony that he shot McDonald because McDonald was out to kill Bockting's mother. The jury was certainly justified in concluding Bockting acted in plain, conscious, and unjustifiable disregard of harm, and that his conduct was a substantial deviation from acceptable standards of conduct. The evidence was sufficient to support the reckless homicide conviction.

## VI

### Self–Defense

■ Bockting next argues he was entitled to acquittal as a matter of law because the prosecution failed to negate any of the elements of his self-defense claim.

In *Martin v. State* (1987), Ind., 512 N.E.2d 850, our supreme court addressed the issue Bockting raises. The court wrote:

> To prevail on a claim of self-defense in a homicide prosecution, the defendant must show that he was in a place where he had a right to be, that he acted without fault, and that he had a reasonable fear of death or great bodily harm. *Wade v. State* (1985), Ind., 482 N.E.2d 704; *see also* Ind.Code § 35–41–3–2. Once the defendant raises the issue of self-defense the State bears the burden

of disproving the existence of one of the elements of self-defense. *Green v. State* (1982), Ind., 438 N.E.2d 266. Among the ways this burden can be met is to present evidence sufficient to convince a reasonable juror beyond a reasonable doubt that the defendant, in light of all the circumstances known to him, could not have entertained a bona fide belief he was in danger of death or great bodily harm. *Shutt v. State* (1977), 267 Ind. 110, 367 N.E.2d 1376.

*Id.,* at 851–52. In *Hill v. State* (1986), Ind., 497 N.E.2d 1061, our supreme court wrote:

> The State may satisfy its burden by affirmatively showing appellant did not act in self-defense or by relying upon the sufficiency of the State's evidence in chief. *Wade v. State* (1985), Ind., 482 N.E.2d 704. Whether the State had disproved appellant's claim of self-defense is a question of fact for the jury to determine.

*Hill, supra,* at 1064. As outlined in the previous section and earlier, the jury could have reasonably concluded both that Bockting did not meet his burden of proving his self-defense claim in the first instance, and that if he did, the state rebutted the claim. Here, the jury did, in fact, choose to disregard Bockting's defense. Bockting elected to shoot an unarmed man from the safety of his truck rather than simply drive away. He was not entitled to acquittal as a matter of law, as he contends.

## VII

### Deposition Testimony

■ Bockting argues the incriminating deposition testimony he gave should not have been admitted into evidence against him because he was not represented by counsel at the deposition and had not been advised of his right not to incriminate himself.

Although an individual testifying at a deposition certainly has the right to refuse to answer a question on the grounds it may incriminate him, we know of no corresponding duty requiring the deponent to be informed of the right not to incriminate one-

self. As Bockting concedes, his *Miranda*[4] rights were not implicated during the deposition because no custodial interrogation occurred.

The record reveals, however, that at the deposition, Bockting was, in fact, advised that he would be asked questions that might require incriminating answers, and that if he was concerned he should obtain counsel. Bockting chose to exercise that right to obtain counsel. It was when the deposition was reconvened two months later that Bockting gave the incriminating statement. Bockting's argument is meritless.

## VIII

### Sentence

Finally, Bockting argues the trial court erred by failing to take into account mitigating circumstances when it imposed sentence upon him. Bockting was given the presumptive four year sentence, enhanced four years by aggravators, with four years suspended, for a total of four years' imprisonment.

A trial court is not obligated to attach great weight to a defendant's evidence of mitigating circumstances. *Johnson v. State* (1983), Ind., 447 N.E.2d 1072. No explanation for failing to credit mitigators is required. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250. A sentence authorized by statute will not be revised except when it is manifestly unreasonable. *Sims v. State* (1992), Ind., 585 N.E.2d 271. A sentence is manifestly unreasonable only when no reasonable person could find the sentence appropriate to the particular offense and offender. Ind. Appellate Rule 17(B)(2).

Here, the record reveals that the trial court, after reviewing all the evidence, found no mitigating factors to justify a reduction in sentence length, but did find aggravators: Bockting was on probation when he committed the offense, the victim's mental condition made him particularly vulnerable, and Bockting's past criminal

history. Our review of Bockting's alleged list of mitigators convinces us the trial court acted appropriately. Bockting's sentence is by no means manifestly unreasonable. There was no sentencing error.

The judgment of the trial court is in all things affirmed.

RATLIFF, C.J., and SHARPNACK, J., concur.

**4.** *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.