Jerry **BUTLER, Appellant–Defendant**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 46A03–9209–CR–289.

Court of Appeals of Indiana,
Third District.

Nov. 3, 1993.

Donald W. Pagos, Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, Michigan City, for appellant-defendant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

Jerry Butler appeals his convictions for Murder and Attempted Murder.

## FACTS AND PROCEDURAL HISTORY:

The record reveals that on the evening of July 18, 1991, Jerry Butler (Butler) and Robert Carrington (Carrington) pulled up to the intersection of 5th and Cedar Streets in Michigan City, Indiana. This intersection was home to a pool, video, and arcade establishment known to the local patrons as the "game room." It was a popular gathering place for some of the youth of Michigan City. In the summertime it was not unusual for "everybody" to be "hanging outside." On the evening in question there was quite a gathering assembled in the area. Tommy James Allison (Allison), the deceased, and Michael Lark (Lark), the intended victim, were also present.

When Butler and Carrington approached the intersection, Butler recognized Michael Lark, who owed him $650.00 from a prior drug deal. Butler stopped the car and approached Lark. Butler had a gun. As Butler approached Lark, he aimed his gun at Lark's head and the two of them exchanged words. Lark then pushed Allison, who was standing nearby, apparently using him as a shield. Shots were fired and Allison fell to the ground with a bullet in his chest. Two other shots hit Lark in his arms. Lark fled on foot while Butler got back into his car and drove off.

On July 19, 1991, the day after the shootings, an information was filed in LaPorte Superior Court charging Jerry Butler with Murder and Attempted Murder. A jury trial was held on March 2, 1992. Butler was convicted of both offenses and sentenced to terms of 40 and 30 years respectively, sentences to be served consecutively.

## ISSUES:

Butler raises six issues on appeal which we restate as follows:

I. Whether Butler's convictions for Murder and Attempted Murder violate the constitutional prohibition against double jeopardy.

II. Whether the trial court erred in imposing consecutive sentences.

III. Whether there was sufficient evidence to support Butler's conviction for Murder.

IV. Whether the trial court erred in admitting certain autopsy photographs.

V. Whether the trial court erred in denying Butler's motion for a new trial on the grounds that a juror had been exposed to prejudicial extraneous information.

VI. Whether the trial court erred in giving certain answers to jury questions during deliberations.

DISCUSSION:

Issue I:

First, Butler argues that his convictions for Murder and Attempted Murder violate the constitutional prohibition against double jeopardy. He specifically argues that he had only one intent to kill, the intent to kill Lark, and that that intent cannot be used twice to support both convictions. Butler misunderstands our double jeopardy analysis.

■■ The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances. *Parks v. State* (1986), Ind., 489 N.E.2d 515, 516. The focus is on the identity of the offenses, not the identity of their source. *Id.* The ultimate issue in these cases is, therefore, whether each offense requires proof of an additional fact which the other does not. *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309; *Parks, supra* at 516. If this test is satisfied, the prohibition of double jeopardy is not violated even if there is a substantial overlap in the elements to be proved or in the evidence needed to establish both offenses. *See Parks, supra* at 516.

■ In the present case the State was required, for each offense, to prove an additional fact which the other offense did not require, namely the identity of separate victims. IC 35–42–1–1 imposes liability on a defendant who knowingly or intentionally kills *another human being.* Here, each offense, the violation and attempted violation of IC 35–42–1–1, was perpetrated against separate victims: Allison, the deceased, and Lark, the intended victim. There were clearly separate "other" human beings as required by the statute and the State more than adequately identified each. Even if it were correct to argue that Butler harbored only one intent, the intent to kill Lark, he will not find relief under double jeopardy where, as here, he committed two separate offenses. We find no double jeopardy violation in this instance.

Issue II:

Second, Butler contends that the trial court erred when it imposed consecutive sentences. Butler's argument on this point is merely a continuation of his previous contention that his convictions for Murder and Attempted Murder were not separate and distinct offenses and therefore to sentence him consecutively was error. We disagree.

■■ Our supreme court in *Parks, supra* dealt with this precise question and we follow its dictates. First of all a criminal defendant has no constitutional right to have sentences run concurrently. *Parks, supra* at 515. Where a defendant commits multiple but distinct offenses, a sentencing judge may appropriately order consecutive sentences. *Elswick v. State* (1991), Ind. App., 565 N.E.2d 1123, 1127, *trans. denied.*

■ As we have noted earlier, the trial court's imposition of consecutive sentences did not punish Butler twice for the same offense. *Parks, supra* at 516. Each of the offenses included one element not included in the other—a different victim. The offenses, therefore, do not merge and Butler may properly be sentenced separately and consecutively for each offense. *Boyd v. State* (1989), Ind., 546 N.E.2d 825, 826–27.

Issue III:

Next Butler challenges the sufficiency of the evidence for the Murder of Tommy Allison.

 In reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Johnson v. State* (1992), Ind.App., 587 N.E.2d 138, 139. Rather, we consider only the evidence most favorable to the State and any reasonable inferences to be drawn therefrom to see if there is substantial evidence of probative value to support the verdict. *Id.* In addition, circumstantial evidence may be sufficient to support a conviction. *Eifler v. State* (1991), Ind. App., 570 N.E.2d 70, 75, *trans. denied.* It is not necessary that every reasonable hypothesis of innocence be overcome, but only that a reasonable inference in support of the verdict may be drawn. *Id.*

 Here, the evidence shows that the police recovered three spent shell casings from the area of 5th and Cedar Streets in Michigan City, where the shootings took place. (R. 157). The spent casings were confirmed to have been fired from a gun that was found by police in a subsequent search of Butler's apartment. In addition, a bullet was recovered from the body of Tommy Allison that could have been fired from Butler's gun. Witnesses at the scene testified that Butler was seen with a gun on the night in question and that he had fired it at Michael Lark. One witness also testified that Lark had pushed Allison at a crucial moment when Butler fired at least one of the shots. We find, therefore, that it was reasonable for the jury in this case to conclude that Butler was the person who fired the shot that killed Tommy Allison. To conclude otherwise would require us to override the jury's function as trier of fact and this we will not do. The evidence was sufficient in this case to support Butler's conviction for the murder of Tommy Allison.

Issue IV:

Butler also contends that the trial court erred in admitting certain photographs taken during the autopsy of Tommy Allison. He contends that these photos were irrelevant to the issues at trial and that their probative value was outweighed by their tendency to inflame the passions of the jury. We disagree.

 It is well settled that a trial court has wide discretion in determining the admissibility of photographic evidence. *Williams v. State* (1990), Ind., 555 N.E.2d 133, 138. That discretion will not be disturbed absent abuse. *Id.* A defendant's concession as to the cause of death does not render the photographs irrelevant or inadmissible. *Id.* The admission of an otherwise relevant photograph becomes reversible error only if its tendency to inflame the passions of the jury, due to its gruesomeness, clearly outweighs its relevancy. *Id.*

 The photographs in this case were relevant and clearly not so prejudicial as to outweigh their relevance. Recognizing this, Butler asks us to overturn our established precedent and rule that all autopsy photographs are inflammatory and should be held inadmissible where a defendant stipulates to the cause of death. We decline his invitation. The trial court did not abuse its discretion in admitting the photographs in question.

Issue V:

Butler next contends that the trial court erred in refusing to grant his motion to correct errors after it was discovered that a juror had been exposed to potentially prejudicial extraneous information. Butler argues that one of the jurors became aware that someone had fired a gun at a prosecution witness earlier in the week and that this information, outside the evidence in the case, substantially prejudiced the jury during deliberations. He asks for a reversal of his convictions and a new trial.

 First, we note that the decision of the trial judge in a criminal prosecution is clothed with a presumption that the trial was properly conducted. *Hammons v. State* (1986), Ind., 496 N.E.2d 1284, 1285. Only where it is manifest that some im-

proper or erroneous basis has been used will we modify the results of the trial judge's deliberations. *Id.*

■ Second, Indiana adheres to the common law rule that a verdict may not be impeached by evidence from the jurors who returned it. *Bockting v. State* (1992), Ind. App., 591 N.E.2d 576, 579, *trans. denied.* A notable exception is made when evidence shows that the jury was exposed to improper, extrinsic material during its deliberations. *Id.; Fox v. State* (1984), Ind., 457 N.E.2d 1088, 1092–93; *Harrison v. State* (1991), Ind.App., 575 N.E.2d 642, 646. The reason for this rule and its exception was articulated in *McDonald v. Pless* (1915), 238 U.S. 264, 267–68, 35 S.Ct. 783, 784, 59 L.Ed. 1300:

> The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils.... If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by witnesses who were competent to testify in a proceeding to set aside the verdict. But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation— to the destruction of all frankness and freedom of discussion and conference.

*Knight v. Parke* (1992), Ind.App., 595 N.E.2d 280, 280–81. We find ourselves within the exception to the common law rule and so proceed to examine whether the trial court erred in its treatment of defendant's motion.

■ In general, a rebuttable presumption of prejudice arises from juror misconduct involving out-of-court communications. *Currin v. State* (1986), Ind., 497 N.E.2d 1045, 1046. Such misconduct must, however, be based on proof, by a preponderance of the evidence, that the extrajudicial contact or communication actually occurred and that it pertained to a matter pending before the jury. *Id.* This is a threshold inquiry that must first be established before the trial judge may consider the presumption or the State's rebuttal on the substance of the claim. *Fox, supra* at 1093. In this initial inquiry, where there is a factual conflict regarding the existence or content of extra-judicial contact, it is within the trial court's province to determine whether the evidence presented showed any irregularity. *Currin, supra* at 1046. Once the defendant establishes to the satisfaction of the trial court that improper contact occurred and that it pertained to a matter before the jury, the presumption arises and the burden shifts to the State for rebuttal. Then, upon consideration of all the evidence, the trial court must be convinced that a substantial possibility existed that the verdict was prejudiced by the improper material before a reversal and new trial will be granted. *Bockting, supra* at 579.

■ The record in this case reveals that one of the jurors acquired knowledge of a claim made by Andora Hogan, a prosecution witness, that someone fired a gun at her on the morning she was to testify at trial. The defense discovered the juror's knowledge of this alleged incident from a newspaper story that ran after the trial was concluded. At the hearing on defendant's motion to correct errors, the juror in question testified that he did indeed receive such information, but also testified that these exposures had not biased him one way or the other. Based on this evidence, the trial court denied Butler's motion to correct errors.

On these facts, it is plain to us that, while Butler may have met his initial bur-

den, he did not demonstrate to the trial court a substantial possibility that the jury was improperly influenced. *Bockting, supra* at 579. Without more, we cannot say that the trial court erred in denying Butler's motion to correct errors.

Issue VI:

Finally, Butler contends that the trial court erred when it responded to jury questions during deliberations. We find, however, that Butler failed to adequately preserve this issue for review.

When a defendant does not properly bring an objection to the trial court's attention so that the trial court may rule on it at the appropriate time, he is deemed to have waived that possible error. *Ingram v. State* (1989), Ind., 547 N.E.2d 823, 829. The objection must be made at the time that the error is made in order to preserve the issue for appeal. *See Killion v. State* (1984), Ind., 464 N.E.2d 920, 921.

In the case at bar, the court recorded the recollections of the parties, their responses to the proposed jury questions, and the answers in fact given by the trial court, sometime after the actual conversations took place. They constitute the only record of the actual proposals and possible objections before us. We therefore use them as the basis for our decision in this case. The pertinent portions read as follows:

THE COURT: ... After that a note came back from the jury indicating that the word they wanted defined was culpability, discussion was held, at that time the Court sent in Instruction No. 9. Mr. Pagos.

MR. PAGOS: Before the Court decided to send Instruction No. 9 back to the jury, the Court solicited from both counsel their opinions on how the Court should respond to the jury's question. My only response was you could not single out one instruction and just send it back....

THE COURT: Mr. Hale....

MR. HALE: ... The State was not advised that the defense was objecting to that proposed action by the Court, therefore, was not aware that the defense was formally raising an objection at that time. State learned that defense intended to raise the objection following the action being taken, that is, the instruction being given to the jury.

THE COURT: ... And in all fairness to the defendant, even if he would have objected, I still would have sent back in Instruction No. 9. Anything else, counsel?

MR. PAGOS: That's all I have, Judge.

THE COURT: Okay, at 9:25 the jury sent out [another] question written on the bottom of Final Instruction No. 10, asking whether or not they can interpret whether or not the underlying statement, the underlying statement being "in the eyes of the law his intent is transferred from the person to whom it was directed to the person actually killed", the question is his intent is transferred to mean can be transferred as opposed to must be transferred, also indicating please return this page. Court in the presence of both counsel and the defendant discussed the question, Defense counsel indicated the answer should be "yes" ...

THE COURT: After discussion, the Court decided to re-submit to the jury Final Instruction No. 1 ...

MR. PAGOS: Well, once again, I object to the procedure of sending a single instruction back to the jury.... That's why I stated that the answer was "yes" ... (R. 463–66).

It appears from this exchange that defense counsel failed to adequately object at the time that the answers were sent back to the jury. Actual objections or asserted objections that are voiced after the asserted error has occurred will not preserve the issue. Butler has waived this issue for appeal.

CONCLUSION:

For the foregoing reasons, the decision of the trial court is affirmed.

HOFFMAN, and FRIEDLANDER, JJ., concur.