John TIMM, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 64S04–9412–CR–1281.

Supreme Court of Indiana.

Dec. 28, 1994.

Mark A. Thiros, Cohen & Thiros, Gregory W. Brown, Brown & Brown, Merrillville, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

When appellant John Timm asked to change lawyers the Friday afternoon before his Monday trial, the trial judge warned him there would be no continuance. The judge was therefore within his discretion to deny the Monday morning motion for a continuance made by his new lawyers.

At trial, a jury convicted Timm of battery, a class C felony, Ind.Code Ann. § 35–42–2–1 (West Supp.1992); impersonation of a public servant, a class A misdemeanor, Ind.Code Ann. § 35–44–2–3 (West Supp.1994); and criminal confinement, a class D felony, Ind. Code Ann. § 35–42–3–3 (West Supp.1994). The court sentenced Timm to eight years imprisonment and assessed a $10,000 fine for battery, one year and $5,000 for impersonat-

ing a public servant, and three years and $10,000 for criminal confinement. The court suspended $15,000 in fines and ordered the sentences to run consecutively.

Timm appealed, claiming that the trial court erred by denying the following motions: (1) his motion for continuance to permit his new counsel to prepare his case, (2) his motion for mistrial based on juror misconduct, and (3) his motion for judgment on the evidence aimed at the charge of battery. The Court of Appeals reversed the convictions and ordered a new trial, holding that the trial court abused its discretion when it failed to grant the continuance. *Timm v. State*, No. 64A04–9203–CR–76, slip op. at 4–5 (Ind.App. Aug. 24, 1994).

We disagree and grant transfer to affirm the trial court.

### Facts

On the evening of January 4, 1991, Randi Mark was driving to her home in Valparaiso when a car with flashing red lights came up behind her. Assuming she was being stopped by a police officer, Mark pulled to the side of the road. Timm was the driver of the car following Mark. Timm exited his vehicle carrying a flashlight and approached Mark's car. He announced that he was a police officer and asked to see her identification. Mark became suspicious and requested to see Timm's badge. Timm immediately struck Mark in the face with the flashlight, smashing her glasses and breaking the head of the flashlight. Retaining her wits, Mark threw her car into gear and drove to the Valparaiso police station. The police later arrested Timm.

### The Motion for a Continuance

■ Timm's trial was scheduled for Monday, October 21, 1991. On the Friday before the trial, Timm and his attorney, Robert Harper, met with Judge Thomas Webber to discuss the possibility of a change of counsel. The judge explained to Timm and his attorney that he would permit the replacement but that there was the risk that the newly retained counsel would not be as well prepared as Harper to go forward with the trial

on Monday. Thus, with counsel present and with a full understanding of the consequences, Timm elected to replace Harper with attorneys Mark Thiros and Gregory Brown.

On the day of the trial, Thiros and Brown requested a continuance in order to prepare for trial. After hearing their arguments, the judge referred to his Friday conversation with Timm and Harper, explaining:

> I appreciate your comments, gentlemen. They were all raised, as a matter of fact, [with] Mr. Harper on his withdrawal, and we ha[d] a lengthy discussion of those ... with Mr. Timm and regarding his wish to replace counsel at the 11th hour. And I think he understood the risk [of] making that decision.

R. at 75 (omissions in original). Judge Webber then denied the motion for continuance.

■ A trial court has discretion when ruling on a motion for continuance, and we will not reverse absent a clear showing that the court abused its discretion. *Olson v. State* (1990), Ind., 563 N.E.2d 565. Furthermore, courts do not favor continuances to allow more time to prepare for trial and should grant such motions only where good cause is shown and it is in the interests of justice. *Id.*

The Court of Appeals found this case was controlled by *Rice v. State* (1942), 220 Ind. 523, 44 N.E.2d 829. In *Rice,* the trial court permitted the defendant's attorneys to withdraw the day before trial. The defendant attempted to secure other counsel, but no lawyer would accept his case without a continuance. *Id.,* 44 N.E.2d at 829. The trial court refused to grant a continuance, forcing the defendant to appear *pro se.* We overturned the defendant's conviction, quoting *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932), for the proposition that in such cases trial courts should either deny the motion to withdraw or permit the continuance. *Id.,* 44 N.E.2d at 830.

In point of fact, the present case more closely parallels *Risner v. State* (1992), Ind. App., 604 N.E.2d 13. In *Risner,* the defendant's attorney moved to withdraw on the day before trial. New counsel entered his appearance and moved for a continuance on the same date. The trial court granted leave to withdraw but denied the continuance. The Court of Appeals upheld the trial court, emphasizing that the defendant had been fully informed of the consequences of changing counsel on the eve of trial and had nonetheless agreed to the change.

Like the defendant in *Risner,* Timm was fully informed by the judge of the possible adverse consequences of changing representation so close to trial. He was not abandoned by counsel, as was the defendant in *Rice,* and he was in no danger of having to represent himself. We find *Risner* persuasive and hold that the judge acted well within his discretion in allowing Timm, with advice from his attorney, to make his own choice in the matter. As the court stated in *Risner,* parties are not entitled to manipulate the judicial process by using a motion to withdraw as counsel to secure a continuance at the eleventh hour. *Id.* at 15. We uphold the trial court's denial of the continuance.

### *The Motion for Mistrial*

■ On the morning of the second day of trial, one of the jurors informed the court that her mother had revealed to her that Timm had a prior conviction for murder. She expressed concern over her ability to remain impartial and requested that she be removed from the jury. After questioning the juror at some length, the judge determined that she remained qualified to serve as a juror. Timm's motion for a mistrial was denied.

■ The decision whether or not to grant a motion for mistrial is also assigned to the discretion of the trial court. *Gregory v. State* (1989), Ind., 540 N.E.2d 585. We will not reverse the denial of a motion for mistrial unless the alleged error was so prejudicial and inflammatory that the defendant was placed in a position of grave peril to which he would not otherwise have been subjected. *Id.* Because of the fundamental role of the jury in our system of justice, however, a rebuttable presumption of prejudice arises where a juror has been involved in out-of-court communications. *See, e.g., Kelley v. State* (1990), Ind., 555 N.E.2d 140.

Even presuming the communication between the juror and her mother was prejudicial, the trial judge took the necessary steps to assure that the juror could render an impartial verdict in this case. *Peters v. State* (1989), Ind., 542 N.E.2d 1340 (upholding denial of mistrial where court found no prejudice after inquiry into communication between witness and juror). The judge questioned this juror about the effect of the communication on her judgment and allowed both counsel to do the same. Furthermore, he admonished the juror repeatedly to determine Timm's guilt or innocence based solely on the evidence presented at trial. While the juror forthrightly acknowledged that she could not "erase [the knowledge] from her memory," she affirmed that she could discharge her duty as a juror. R. at 232. There is no suggestion that she shared this information with the other jurors.

### The Sufficiency of the Evidence

■ Timm also contends that the evidence presented at trial was insufficient to sustain his conviction for battery. The Indiana Code states that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery.... a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon." Ind.Code Ann. § 35–42–2–1(3). Timm argues that the State failed to establish that the attack was committed with a deadly weapon or resulted in serious bodily injury.

■ Whether an object is a deadly weapon is a question of fact for the jury to determine based on the manner of its use and circumstances of the specific case. *Miller v. State* (1986), Ind., 500 N.E.2d 193. In determining whether the evidence was sufficient to sustain the battery conviction, we neither reweigh the evidence nor reevaluate the credibility of the witnesses. We consider only the evidence most favorable to the conviction, together with all reasonable inferences therefrom. We will reverse the conviction only if the State failed to adduce substantial evidence from which the jury could have inferred guilt beyond a reasonable doubt.

*Cummings v. State* (1979), 270 Ind. 251, 384 N.E.2d 605.

The Indiana Code defines a "deadly weapon" as (1) a loaded or unloaded firearm or (2) a weapon, device, taser or electronic stun weapon, equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury. Ind.Code Ann. § 35–41–1–8 (West Supp.1993). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protected loss or impairment of the function of a bodily member or organ." Ind.Code Ann. § 35–41–1–25 (West Supp.1994); *cf.* Ind.Code Ann. § 35–41–1–4 (West Supp.1994) (defining "bodily injury" as "any impairment of physical condition, including physical pain.").

■ We have held that it is the manner in which the instrument was used, not its originally intended use that determines whether something is a deadly weapon. *Cummings,* 384 N.E.2d at 606. We look to the capacity of the object to inflict serious bodily injury under the factual circumstances of the case. *See Majors v. State* (1980), 274 Ind. 261, 410 N.E.2d 1196 (holding that large rock constituted deadly weapon); *Cummings,* 384 N.E.2d 605 (stapler); *Jones v. State* (1978), 269 Ind. 543, 381 N.E.2d 1064 (starting pistol); *Liston v. State* (1969), 252 Ind. 502, 250 N.E.2d 739 (chunks of porcelain); *Short v. State* (1954), 234 Ind. 17, 122 N.E.2d 82 (soft drink bottle).

Here, Timm struck Mark in the face with a long-handled plastic flashlight. Mark testified that the force of the blow broke her glasses and that the flashlight "shattered" upon impact. R. at 202. Later, at the hospital, Mark received thirteen stitches to her eye and was treated for multiple lacerations to her face.

Whether or not the jury found that Mark's injuries were serious in this case, the jury could reasonably have concluded on these facts that the flashlight was capable of causing serious bodily injury. The evidence was therefore sufficient to support the conclusion

that Timm attacked Mark with a deadly weapon.[1]

We grant transfer and affirm Timm's convictions.

DeBRULER, GIVAN, DICKSON, and SULLIVAN, JJ., concur.

---

1.  Because we find the evidence sufficient to support a finding that the flashlight was a deadly weapon, we need not determine whether the jury could have concluded that Mark suffered "serious bodily injury."