Leonard EMERY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 76A04–9706–CR–228.

Court of Appeals of Indiana.

June 25, 1998.

Susan K. Carpenter, Public Defender, and David P. Freund, Deputy Public Defender, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, and Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Leonard Emery ("Emery") appeals his convictions for Sexual Battery While Armed With a Deadly Weapon, and Attempted Rape While Armed With a Deadly Weapon.[1] We affirm.

### Issues

Emery raises two issues on appeal which we restate as:

I.  Whether the trial court properly denied Emery's Motion to Correct Error despite an improper extrajudicial communication between one juror and her boyfriend.

II. Whether Emery's convictions for both Sexual Battery While Armed With a Deadly Weapon and Attempted Rape While Armed With a Deadly Weapon violated his right to be free from multiple punishments for the same offense.

### Facts

The facts most favorable to the verdict indicate that on July 29, 1989, L.C. went to the office of Midwest Trucking Company ("Midwest") on her way home from a five week truck driver training school to meet with Emery, who was working as the Dispatcher for Midwest, to fill out some employment paperwork. After L.C. completed the paperwork, she left the office. However, before L.C. reached her truck, Emery came outside and informed her that there was an insurance paper she had forgotten to sign and that she needed to come back inside. L.C. complied with Emery's request and returned to the office.

As L.C. began to read the insurance paper, Emery grabbed her from behind, held a knife to her throat, and fondled her breast. (R. 250–51). Emery told L.C. that "she had nice breasts" and that he "wanted her [p——]." (R. 249–53). Afraid that Emery was going to cut her, L.C. grabbed the knife with her hand, and the two struggled. (R. 253–54). L.C. then tried to escape but Emery tripped her, knocked her to the floor and pinned her down. (R. 253–55). L.C. and Emery were still struggling over the knife when they agreed to throw the knife so that neither person could have it. (R. 255–56). Emery continued to pin L.C. on the floor and kiss her. Realizing that Emery intended to rape her, L.C. tried to distract him by saying, "Can't we do this somewhere else? This is uncomfortable." (R. 256). Emery responded by saying "No, there's no where else" and then yanked her shirt out of her jeans while saying, "I want your [p——]" and "You're a beautiful young lady." (R. 256–58).

At that time, however, Emery realized that L.C. had been cut. Emery then led L.C. into the bathroom, while holding her wrists, to take care of her cuts which were bleeding. (R. 257). Emery did not let go of L.C. until she suggested she might have some band-aids in her truck. (R. 259, 261). Emery then walked L.C. to her truck and let L.C. get into the truck to look in the glove box while he stood in the doorway. (R. 261–62). Emery eventually let L.C. leave after she agreed not to tell the police. (R. 262–63). L.C.'s parents subsequently took her to the hospital where she received three or four stitches. (R. 264).

### Procedural History

Emery was convicted by a jury for Attempted Rape While Armed With A Deadly Weapon, Sexual Battery While Armed With A Deadly Weapon, and Battery While Armed With A Deadly Weapon. However, the trial

---

1. IND.CODE § 35–42–4–8 (Sexual Battery); IND. CODE §§ 35–42–4–1 and 35–41–5–1 (Attempted Rape).

court only sentenced Emery on the Attempted Rape and Sexual Battery convictions due to its earlier finding that the conviction for Battery While Armed With a Deadly Weapon merged with the Attempted Rape conviction. (R. 83). Emery subsequently filed a Motion to Correct Error which was denied.

## Discussion and Decision

### I. Extrajudicial Communication

Emery asserts that the trial court erred in refusing to grant his Motion to Correct Error after it was discovered that juror Teresa Austin ("Austin") had learned, through an improper extra-judicial communication with her boyfriend, that Emery was a prisoner in jail. Thus, Emery claims that he was denied both the presumption of innocence and a fair trial. We disagree.

■ Initially, we note that the decision of the trial judge in a criminal prosecution is clothed with a presumption that the trial was properly conducted. *Butler v. State*, 622 N.E.2d 1035, 1039 (Ind.Ct.App.1993), *trans. denied.* Further, the decision whether or not to grant a motion for mistrial is left to the discretion of the trial court. *Timm v. State*, 644 N.E.2d 1235, 1237 (Ind.1994). A trial court's decision regarding whether to grant a mistrial is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. *Kelley v. State*, 555 N.E.2d 140, 141 (Ind.1990). Thus, we review the ruling of the trial court to determine whether or not there was an abuse of discretion. *Pittman v. State*, 528 N.E.2d 67, 72 (Ind.1988).

> We will not reverse the denial of a motion for a mistrial unless the alleged error was so prejudicial and inflammatory that the defendant was placed in a position of grave peril to which he would not otherwise have been subjected. Because of the fundamental role of the jury in our system of justice, however, a rebuttable presumption of prejudice arises where a juror has been involved in out-of-court communications.

*Timm*, 644 N.E.2d at 1237. "Once the defendant establishes to the satisfaction of the trial court that improper contact occurred and that it pertained to a matter before the jury, the presumption arises and the burden shifts to the State for rebuttal." *Butler*, 622 N.E.2d at 1040. At that point, upon consideration of all the evidence, the trial court must be convinced that a substantial possibility existed that the verdict was prejudiced by the improper material before a reversal and new trial will be granted. *Id.*

■ The record reveals that on March 19, 1997, the trial court held an evidentiary hearing on Emery's Motion to Correct Error where Austin testified regarding the conversation which took place between she and her boyfriend after the first day of Emery's trial as follows:

Q: Did your boyfriend indicate to you information regarding Emery's past convictions?

A: No.

Q: Well ... you informed the Prosecutor that he gave you or said some stuff to you about Mr. Emery's ....

A: All that was said was something about him bein' in jail, which I already knew.... But then he quit talkin' because then he says, you know, 'you're not supposed to talk about that are you?' And I said 'No.' And that was it.

. . . .

Q: But you're saying that there was never any mention of why he was in jail?

. . . .

A: No. I still don't even know why....

. . . .

Q: Okay. But you wouldn't have known he was even in jail except for what your boyfriend had told you, is that correct?

A: Oh yes, I would have known from the simple fact I went to get on the elevator one day returning from lunch, the first day, and there was two or three other people with me at the time. We couldn't get on the elevator because somebody was transporting a prisoner.

Q: I see. But nobody had said anything to you? This is just what you observed? Correct?

A: Well, usually when they tell you someone's a prisoner that means they're in jail.

(R. 420–422). Based on Austin's testimony, the trial court denied Emery's Motion to Correct Error, stating in pertinent part:

All right. Based upon the evidence that the Court has heard this morning, the Court's going to find at this time that it's regrettable of course that this occurred, but there is nothing regardless of how many times this Court admonishes a juror that can be done if someone simply approaches the juror and blurts out some innocuous comment concerning, oh, so and so may be in jail. The Court's going to find that there was no prejudice suffered by Mr. Emery in this case as a result of that comment being made by the boyfriend of the juror since, again, unfortunately Mr. Emery apparently was recognized by this juror as well as one or two other people who were not identified as jurors, and I don't know if they were or not, as a prisoner. And as the juror correctly asserted, there would be no reason to think that a prisoner would not be in jail. Therefore, the Court is going to find that the defendant in this case, Leonard Emery, did not suffer any prejudice in this case as a result of this comment. The defendant's Motion to Correct Errors will be denied.

(R. 424–25). After a careful review of the record, it is plain to us that, while Emery may have met his initial burden of showing an improper extrajudicial communication, he failed to demonstrate to the trial court a substantial likelihood that the jury was improperly influenced in arriving at its verdict. Austin was already aware that Emery was in police custody prior to the improper communication by her boyfriend and there was no suggestion that Austin shared this extraneous information with the other jurors. Without more, we cannot say that the trial court abused its discretion in denying Emery's request for a mistrial.

## II. Double Jeopardy

Next, Emery claims that his convictions for Attempted Rape While Armed With a Deadly Weapon and Sexual Battery While Armed With a Deadly Weapon violate his right not to be convicted twice for the same crime.

■ The prohibition against double jeopardy is a constitutional rule which prevents a defendant from being punished twice for the same offense. *Potter v. State,* 684 N.E.2d 1127, 1136 (Ind.1997).

In *Games v. State,* 684 N.E.2d 466 (Ind. 1997), our supreme court recently held that the court's 'previous interpretation of the federal Double Jeopardy Clause—which looked beyond the statutory elements, adding the requirement that a reviewing court look to the offenses as charged or to the jury instructions outlining the elements of the crime—does not comport with federal jurisprudence.' *Games,* 684 N.E.2d at 474. Instead, when faced with a double jeopardy issue, the proper test to be applied is the two-part inquiry announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180,, 76 L.Ed. 306 (1932). First, we determine whether or not the legislature intended to impose separate punishments for multiple offenses arising in the course of a single act or transaction. Where legislative intent is clear that multiple punishment is intended, double jeopardy is not violated and further inquiry into the statutory elements is not appropriate. It is only where legislative intent to impose multiple punishments is uncertain that further inquiry is required.

When the legislative intent is uncertain, however, a comparison of the statutory elements at issue is required. The applicable rule is that, where the same act or transaction continues a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. The factual elements in the charging information and jury instructions are no longer a part of this inquiry.

*Fulk v. State,* 686 N.E.2d 165, 167 (Ind.Ct. App.1997) (citations and quotations omitted).

After a thorough review of the record, we find that the facts in this case support convictions for two separate acts, despite their temporal proximity. Emery grabbed L.C. from behind, held a knife to her throat and fondled her breast. In so doing, Emery committed Sexual Battery. Emery subsequently tripped L.C. as she tried to escape, knocked her to the ground and pinned her to the floor. Further, while still having at least constructive possession of the knife, Emery yanked L.C.'s shirt out of her jeans and said, "I want your [p——]," and "You're a beautiful young lady." These subsequent acts, which went beyond those required to effectuate the Sexual Battery offense, constitute sufficient evidence to support a finding of a substantial step towards intercourse, thereby satisfying the material elements of the separate offense of Attempted Rape. *Cf. Wethington v. State,* 560 N.E.2d 496 (Ind.1990) (holding that no double jeopardy violation occurs when the force used to effectuate an offense (there Robbery) continues beyond that inherent in the force necessary to effectuate the other crime (there Confinement)). Based on the foregoing, we believe it was proper to convict and sentence Emery for both Attempted Rape and Sexual Battery.

Assuming without conceding that the two acts did not constitute two separate offenses, Emery's argument still fails under our current double jeopardy analysis.[2] Here, the Sexual Battery and Attempted Rape statutes, do not, on their face, indicate an intent by the legislature to impose multiple punishments for the same offense. Thus, we must review their language under the "same elements" test. *See Mitchell v. State,* 690 N.E.2d 1200 (Ind.Ct.App.1998), *trans. denied.*

A person commits Attempted Rape While Armed With a Deadly Weapon when he or she (1) knowingly or intentionally (2) takes a substantial step towards (3) having intercourse with another person of the opposite sex (4) through threat or use of deadly force. IND.CODE §§ 35–42–4–1 and 35–41–5–1. Sexual Battery While Armed With A Deadly Weapon, on the other hand, requires the (1) touching of another person, (2) with the intent to arouse one's own sexual desires or the sexual desires of another person (3) through threat or use of deadly force or while armed with a deadly weapon. IND.CODE § 35–42–4–8. In reviewing these definitions, we find that each crime contains an element which the other does not. Attempted Rape requires a substantial step toward having intercourse, which is not required for Sexual Battery. On the other hand, Sexual Battery requires a touching with the intent to arouse or satisfy one's own sexual desires or those of the victim, which is not required for Attempted Rape. Thus, even though both offenses involve the use or threat of force, each offense contains an element which is not required by the other. Accordingly, we find that Sexual Battery and Attempted Rape are two separate and distinct crimes, neither of which is a lesser included offense of the other.

Affirmed.

NAJAM and RILEY, JJ., concur.

---

**2.** Emery attempts to avoid the *Blockburger* "elements analysis" by asserting that he does not base his double jeopardy claim on any constitutionally guaranteed right found in either the Indiana or United States Constitutions. Instead, he urges us to engage in a purely statutory analysis based on IND CODE §§ 35–41–1–16 and 35–38–1–6. While creatively phrased, we find Emery's argument mere sophistry. Simply put, Emery is claiming a violation of his constitutional right against double jeopardy and the statutes Emery cites are an embodiment of that fundamental right. Thus, in light of *Games,* a *Blockburger* "elements analysis" is necessarily the proper method to be used when determining if the "statutory" prohibition against double jeopardy has been violated.