Baker, Judge,
dissenting in part and concurring in part.
I fully concur with the majority with respect .to Clemons’s probation condition. I respectfully part ways with my colleagues, however, with respect to the jury instruction.
The majority contends that, even without a jury instruction on the definition of serious bodily injury, the jury could use its common sense to determine whether the metal pole Clemons used was capable of causing death, and therefore also capable of causing serious bodily injury. But without a jury instruction defining the term, the jury had no way of knowing that creating a substantial risk of death is included in the definition of serious bodily injury. Thus, the majority essentially relies on the statute that defines serious bodily injury in order to argue that the jury did not need a definition of serious bodily injury.
The jury received an instruction on “deadly weapon” 'but not on “serious bodily injury.” Because a-factfinder cannot determine whether a deadly weapon was used without also knowing what constitutes a serious bodily injury, the lack of instruction on the definition of “serious bodily injury” means that the jury was not sufficiently informed about the charge of battery with a deadly weapon. In other words, because the jury did not receive' an instruction on the definition of “serious bodily injury,” the jury was necessarily unable *110 to determine whether the metal pole Clemons used against Willoughby was capable of causing a serious bodily injury.
The majority notes that the'“‘trial court has a duty to give further instructions defining words used in other instructions only if the words are of a technical or legal meaning normally not understood by jurors unversed in the law.’ ” Slip op, para. 10 (quoting Martin, 314 N.E.2d at 70). Yet “serious bodily injury” is a' legal term of art with a precise meaning defined by our General Assembly, unlike many other terms that do not have codified definitions. See Martin, 314 N.E.2d at 70 (trial court did not err by refusing to give a jury instruction defining the term “purposely” because “the word ‘purposely’ is not used in á technical legal sense and is quite readily understood by the average layman”); Moreland v. State, 701 N.E.2d 288, 295 (Ind. Ct. App. 1998) (trial court did not err in failing to offer a jury instruction defining the phrase “with the intent to” because “‘[wjith the intent to’ is not the type of phrase that has a technical or legal meaning not' understood by the average juror”).
The majority distinguishes this case from Kimbrough based on the fact that the Kimbrough Court did not-address whether the failure to give an instruction on the definition of serious bodily. injury would have constituted .fundamental error. I, however, find Kimbrough instructive: the Kimbrough Court specifically found that the jury could not determine whether the defendant committed battery with a deadly weapon without knowing the definition of serious, bodily injury. Kimbrough, 911 N.E.2d at 634. The inverse of the Kim-brough court’s reasoning is that the failure to provide an instruction on the definition would have amounted at least to error, if not fundamental error. .
Similarly, the majority finds Comer unhelpful. As the majority acknowledges, the definition of serious bodily injury has changed since the Comer decision, but the majority neglects to also consider that since that decision, our General Assembly has enacted a new statute that also defines moderate bodily injury. I.C. § 35-31.5-2-204.5. This new statutory category of injury only reinforces the Comer Court’s concern that it “would be' highly speculative to maintain that laymen would define serious bodily injury in the manner that our Legislature has seen fit to do.” Id. at 55. Without instructions on both serious bodily injury and moderate bodily injury, it' is speculative that the jury would be able to differentiate between these terms as our General Assembly saw fit to do,
Indeed, what muddies the waters here is the fact that the State also charged Clemons with battery resulting in moderate bodily injury. As a result, the jury was instructed on the definition of “moderate bodily injury” but not oh “serious bodily injury.” It is possible that a weápon could be capable of causing serious bodily injury while actually causing only moderate bodily injury. In other words, these charges were not inherently contradictory became a weapon may be deadly but cause only moderate bodily injury. But because the State elected to charge Clemons in this fashion, the jury w$s only asked to find that Willoughby sustained moderate bodily injury, ,
Had Willoughby’s injuries clearly constituted serious bodily injury, I would .affirm, because a weapon that actually causes serious bodily injury is necessarily capable of causing such injury. See, e.g., Gleason v. State, 965 N.E.2d 702, 707-710 (Ind. Ct. App. 2012) (finding that, brass knuckles constituted a deadly weapon after the defendant used them to hit the victim in the head, causing him to fall, start *111 bleeding, and get four stitches); Timm v. State, 644 N.E.2d 1235, 1238 (Ind. 1994) (finding that the jury could have reasonably concluded that the flashlight defendant used was a deadly weapon capable of causing serious bodily injury because when the defendant struck the victim in the face with it, the flashlight shattered upon impact, the victim’s glasses broke, and the victim received thirteen stitches to her eye and treatment for multiple lacerations to her face). But I cannot say that it is a given that a jury would have found swelling, pain, and a wrist fracture to constitute serious, as opposed to moderate, bodily injury. Compare 1,0. § 35-31.5-2-204.5 (“ ‘Moderate bodily injury* means any impairment of physical condition that includes substantial pain”), with I.C. § 35-31.5-2-292 (“ ‘Serious bodily injury’ means bodily injury that creates a substantial risk •of death or that causes (1) serious permanent disfigurement; ... (3) extreme pain; [or] (4) permanent or protracted loss or impairment of the function of a bodily member or organ ... ”). And as stated above, ■ in this case, the jury found only that Willoughby sustained moderate bodily injury. Without a separate instruction regarding the definition of “serious bodily injury,” the jury was insufficiently instructed on how to distinguish between these two categories of injury, and I cannot say with certainty that the same result would have occurred had the jury been properly instructed.
I would, therefore, find that the jury instructions were so flawed as a result of the omission of a definition of “serious bodily injury” that they constituted fundamental error. In all other respects, I fully concur with the majority opinion.